Matter of the Estate of John B. Chambers, Deceased.

(Surrogate's Court, New York County, July, 1920.)

Wills — construction of — intention of testator — trusts — testa-
mentary guardians — evidence — executors and administrators
— when legatees take as individuals and not as "adopted
children."

An unmarried testator who had taken two children about
five years of age from a home for children, lived about two
months after executing his will, drawn by himself, which made
provision for his "adopted children." He never legally adopted
either of them nor did he change or revoke his will, the prin-
cipal purpose and scheme of which was to provide for said
children. *Held,* that his intention was that the children should
take legacies under the will as individuals and not in the legal
character of "adopted children."

While extrinsic evidence may be received to show the condi-
tion of the estate and the surroundings of the testator as
they existed at the date of the execution of the will, it is
inadmissible to show testamentary intention.

While an attempted appointment of a testamentary guardian
for the children was void, the directions of the will as to the
property involved constituted a valid power in trust; the execu-
tors should act as trustees of the principal sum given to said
children and as trustee for the children the one sought to
be appointed testamentary guardian should receive from the
trustees of the fund the income and apply the same, as well
as other property mentioned, to the use of said children as
directed by the will.

Proceeding under section 2615 of the Code of Civil
Procedure to construe a will.

Rabenold & Scribner (Charles E. Scribner, of
counsel), for executors.

William L. Chambers (Butler & Vale, with him on
the brief), respondent in person and for respondents
Marguerite N. Chambers and Laura L. Wilson.

Surrogate's Court, New York County, July, 1920. [Vol. 112.

John F. Couch, special guardian for infants Clara Belle Woodin and Charles Woodin.

COHALAN, S. This is a proceeding under section 2615 of the Code of Civil Procedure to construe a will. John B. Chambers, the testator, died October 28, 1919; the will is dated August 13, 1919, and was admitted to probate January 5, 1920. The questions involved concern the provisions in favor of two children whom the testator took into his home in November, 1918, nearly a year before his death, with the understanding that he could keep them a year and adopt them if he so desired. The children were twins named Charles Woodin and Clara Belle Woodin, and were about five years old when they were taken into the testator's household. When only three months old they were separated from their parents and placed in the County Home at Lakeville, Conn. The visiting nurse at the home is their legal guardian in Connecticut. At the time of making his will it seems that the testator intended to legally adopt the two children, but apparently changed his mind regarding the little girl shortly before his death. He thought she should have a mother's care and as he was then unmarried and could not give her such training, he had intended to return the girl and keep and legally adopt the little boy. The will, however, which provided for the two children had been made more than two months previously and was not changed or revoked. Immediately upon taking the two children in November, 1918, he changed their names to William Henry Chambers and Marguerite Kells Chambers in memory of his father and wife who were deceased. During the eleven and a half months that the children were with him the testator became very fond of them and provided generously for their comfort and welfare. He employed a governess and spoke and

wrote of the two little ones as " my children " and gave them all the affection of a devoted parent. After they had been with him for about nine months he made his will bequeathing them over $40,000 and giving them other benefits as will hereafter appear. Because he referred to them in his will as " my adopted children " and " my children," when, in fact, he had not legally adopted them, the executors were in doubt as to the validity of the bequests and brought this proceeding to construe the will.

After a bequest of $1,000 to a cemetery association of St. Louis, Mo., the will provides as follows:

" To my two adopted children, William Henry Chambers and Marguerite Kells Chambers, I bequeath each the sum of twenty thousand dollars ($20,000.00). I direct that this total sum of forty thousand dollars ($40,000.00) be set aside out of the first moneys realized from the assets of my estate and in this manner shall take priority over any and all other bequests thereinafter mentioned, even to the total exclusion if necessary of such other bequests, except as may be necessary in order to make this will legal.

" I further direct that such sum of forty thousand dollars ($40,000.00) be placed on deposit with the Columbia Trust Co. of the City of New York and so retained until said mentioned children become of legal age, when it shall be subject to their withdrawal and disposition. In the interim the annual interest shall be paid over to their guardian hereinafter mentioned and by her used as in her best judgment is for their good."

If either child died before reaching " legal age " the survivor took the share of the other and " in the event of the death of both children before coming of age," the entire sum bequeathed to the children was to go to certain relatives of the testator and to his sisters-in-law in specified amounts. The will then provides:

" I appoint as guardian for my children aforemen-
tioned, my sister-in-law, Mrs. Corinne Goll.  I prefer
that my children make their home with her wherever
she may reside, and as compensation for their keep I
direct that out of the residue of my estate, there be
paid her one hundred fifty dollars ($150.00) per month,
or whatever part of such amount as my estate will
afford.

" I direct that my residence at Pelham Manor be sold
at a price satisfactory to my executors and the pro-
ceeds applied to my estate.  All my household furnish-
ings, silverware, books, pictures, etc., together with my
automobile to be used by the said Mrs. Goll for the
comfort and pleasure of my children.  All my personal
wearing apparel to be given to my adopted son, and all
articles of jewelry other than my three-stone diamond
finger ring and diamond heart above disposed of shall
be equally divided between my two children.

"After all bequests aforementioned have been satis-
fied the remainder of my estate covering all property
of whatsoever nature, wheresoever located, shall remain
intact in the hands of my executors and by them or their
successors divided in equal parts between my two chil-
dren, upon their coming of legal age, or in the event of
the death of one of them, the surviving one shall inherit
the whole, and in the event of the death of both chil-
dren, before coming of age, the entire remaining estate
is to be divided between the surviving legatees in the
same proportion as they share by the original
bequests.''

Certain of the legatees and next of kin of the
decedent appear and contest the validity of these pro-
visions.  They contend that the gifts to the two chil-
dren are void because there are no persons *in esse*
answering to the description and qualified to take such
gifts, the testator having died childless, never having

Misc.]  Surrogate's Court, New York County, July, 1920.

adopted the two Woodin children. On the other hand, as urged by the special guardian, the two children mentioned in the will are identified beyond question and the gifts were not intended to be conditional upon the legal adoption of the beneficiaries. The respondent Chambers in his answer, the executors in their petition, the stipulation on the record, as well as the evidence taken, establish the fact that the twin children, Charles Woodin and Clara Belle Woodin, are the two persons described in the will as "William Henry Chambers and Marguerite Kells Chambers." Identity being conceded, it is contended that the words "my two adopted children" and "my children" are not mere words of description, but were intended by the testator to indicate the capacity in which the legatees were to take. In other words, the next of kin claim that the testator did not intend any part of his estate to go to the two children, unless they were legally adopted by him. I am of a different opinion and am convinced that the children are entitled to the gifts. The testator had the children nine months before he made the will and had come to love them. In December, 1918, he wrote: " You cannot imagine more attractive children. They call me daddy as pat as if they had lived with me always. I simply cannot tell you what joy they give me. Really I do not think I could have looked the world over and found two other children to have suited me as well." In March, 1919, he wrote: " I certainly did strike it just right when I found them, as they are charming children and give me a world of pleasure." He was building a new house at Pelham Manor because his apartment was too small for them. At the time he executed his will the twins had become the most important thing in his life. He spoke of them as his adopted children, although he well knew, as the evidence discloses, that he would have to take

formal legal steps to actually adopt them in the legal sense. He lived over two months after executing his will and did not legally adopt either of the children or change his will. I think it is perfectly clear that he intended the two children to take under his will as individuals and not in the legal character of adopted children. The word " adopted " is frequently used in a loose sense by laymen. The Century Dictionary defines " adoption " as " the act of taking into an affiliated relation " and distinguishes this meaning of the term from the legal signification as follows: " Simple adoption of a child extends only to his treatment as a member of the household; legal adoption may confer on him any or all the rights of actual relationship." In the sense of being taken into an affiliated relationship and of being members of his household the testator apparently correctly described the twin infants. The will refers to the children as if already adopted. Knowing that he had not legally adopted them, this would indicate that he considered he had already " adopted " them in a sense by giving them all that a parent could give. The right of inheritance could be conferred only by law after a formal legal adoption. It seems plain that the will was made as a further evidence of his solicitude by providing against the known consequences to the two little ones of his dying intestate before he had made suitable provision for their future.

The evidence offered by one of the respondents as to his conversations with the testator after the date of the will was properly rejected. *Matter of Lyden,* 64 Misc. Rep. 597; *Morris* v. *Sickly,* 133 N. Y. 456. In the latter case, at page 459, the court said: " While a will is in some sense ambulatory as to the objects and subjects with which it deals, yet it is not ambulatory as to the meaning of the language used by the testator and

the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and *cannot be varied or changed by any after-occurring events.*"

The intention of the testator must be gathered from the will itself and cannot be shown by parol. Extrinsic evidence is permissible only to show the condition of the estate and the surroundings of the testator as they existed at the date of making the will. *Myers* v. *Eddy,* 47 Barb. 263; *Matter of Keleman,* 57 Hun, 165; affd., 126 N. Y. 73, 78. What the intentions of the testator were after he made the will and immediately preceding his death are immaterial to the question herein. If, from the will and in view of the surrounding circumstances at the date of execution, the intentions of the testator are clear, subsequent oral or even written declarations are inadmissible to show his intentions when he signed and published the will. The law prescribes the manner in which a will may be altered or revoked and the same result cannot be obtained by less solemn declarations.

Under the few authorities obtainable the two infants herein are entitled to the legacies.

In *Prentice* v. *Achorn,* 2 Paige, 30, 32, the testator had described a devisee as " my wife, Jemima." Though she had married the testator, she had a husband living at the time of the ceremony and was not the wife of the testator. The chancellor said: " Whether he was imposed upon or not at the time of his marriage, it is evident he must have known previous to the execution of the will that her former husband had been heard of since that time. *The expressions in the will must be taken with reference to the fact that he knew they were not legally married.*" As the special guardian so aptly states, we have only to substi-

Surrogate's Court, New York County, July, 1920. [Vol. 112.

tute *adopted* for *married* in the italicized sentence to
have the statement perfectly fitted to the instant case.
The special guardian with commendable learning and
industry has deduced a rule that, where a testator de-
scribes a relationship *which he knows does not exist*
but identifies the object of his bounty by name, he will
be deemed to have made his benefactions with a knowl-
edge of the non-existence of the described relation.
*Klein* v. *Hayck,* 5 Redf. 210; *Matter of Brown,* 26
Times L. R. 257; *McDole* v. *Thurm,* 114 N. E. Repr.
542; *Smith* v. *Smith,* 4 Paige, 271; *Matter of McGuire,*
Tucker, 196. Nothing need be added to the cases
cited. They fully support the conclusion of the special
guardian and are analogous to the situation herein.

*Steen* v. *Steen,* 68 N. J. Eq. 472, is not to the con-
trary, but falls under the class of cases where a devise
or bequest is made under a mistake of fact. The rule
of dependent relative revocation is a familiar instance.
By analogy it has occasionally been held that a devise
or bequest may contain a condition even though not
expressed. This rule has been applied only where the
evidence *dehors* the will is so strong as to lead to no
other reasonable conclusion than that the gift was
intended to be conditional. In *Steen* v. *Steen, supra,*
the gift was as follows:

" I give, devise and bequeath to my daughter, Mar-
guerite J. Irwin Steen, wife of my son, John A. Steen,
all of my estate, real, personal and mixed, during the
lifetime of my said daughter, and, after her decease,
to her heirs as would by law inherit the same, being the
issue of said marriage of my said son, John A. Steen."

From the evidence taken it appeared that at the time
of the execution of the will the son John was not mar-
ried, but engaged to marry Marguerite J. Irwin, and
that this was known to the testator. The marriage
never took place, however, and it was held that Mar-

guerite J. Irwin was not entitled to the gift.  Although the testatrix had corresponded with her son's fiancee, she had never met her but had seen a single photograph of her son and intended daughter-in-law.  The gift over to the issue was considered an important factor in showing the intent of the testatrix that the gift was conditional upon the marriage taking place. That case is readily distinguishable from the case now before the court.  In the *Steen* case every motive for an unconditional gift was lacking.  In this case every motive for such a gift is present.  In the *Steen* case the relations between the son and his fiancee were not created by the testatrix, and her interest in the beneficiary was plainly prompted by the expectation of the marriage taking place.  In the instant case, however, there was a status created by the testator himself, a change of names, great love and affection for the infants, custody and control of them for many months prior to the making of the will, and careful and thoughtful testamentary provisions clearly inspired rather by benevolent and reciprocal affection than by thoughts of a possible future duty.

The will was evidently drawn by the testator himself. His language is sufficiently clear and explicit.  He knew the two children had not been legally adopted.  His benefactions to them constitute the principal purpose and scheme of the will.  His provisions for them were so elaborate that it seems that he would have stated that the gifts were to be conditional had he intended them to be so.  He plainly states the disposition of the bequests to the children in the event that either or both shall die before arriving at the age of twenty-one, and it is very reasonable to assume that he would have used appropriate words were his intent other than to make the gifts to the children as individuals without condition or limitation.

Surrogate's Court, Westchester County, July, 1920.   [Vol. 112.

The attempted appointment of a testamentary guardian for the two children is void, but the directions as to the property involved constitute a valid power in trust. *Matter of Kellogg,* 187 N. Y. 355. The executors named should act as trustees of the principal sum of $40,000 until the children come of age. As trustee for the children Mrs. Goll should receive the income from the two trustees of the fund, and apply said income as well as the other property mentioned to the use of the children as directed by the will.

The will is construed accordingly.

Decreed accordingly.