[Civil No. 4129. Filed December 9, 1940.]

[108 Pac. (2d) 385.]

In the Matter of the Estate of THOMAS C. NOLAN, Deceased. HONORA M. NOLAN, Appellant, v. GRACE I. HUMPHRIES, also Known as GRACE NOLAN, Individually and as Executrix of the Estate of THOMAS C. NOLAN, Deceased, Appellee.

Mrs. E. G. Monaghan and Mr. Thomas A. Flynn, for Appellant.

Messrs. Fennemore, Craig, Allen & Bledsoe, for Appellee.

LOCKWOOD, J.— ■  This is an appeal from a judgment of the superior court of Maricopa county, denying the petition of Honora M. Nolan to revoke a probate of will and confirming the order previously made admitting the will in question to probate. No transcript of the testimony was filed, the appellant preferring a statement of facts under sections 3866–3869, 3871 and 3873, Revised Code of 1928. Considering the evidence set forth in the statement in the strongest manner in support of the judgment, the material facts necessary for its review are as follows:

On August 5, 1903, Thomas Nolan, hereinafter called decedent, was married to Honora M. Nolan, hereinafter called petitioner, and they lived together as such husband and wife until the middle of June, 1931. About the year 1926 Grace I. Humphries, hereinafter called respondent, became acquainted with decedent and petitioner while she was teaching school in Prescott, Arizona. A strong friendship sprang up between the parties, which developed into a warmer feeling on the part of decedent at some time prior to March 10, 1931. On that date he made a holographic will, which reads as follows:

"March 10th, 1931

"This being my last will and testament I will and bequeath all my real and personal property to my future wife, Grace I. Humphries, now residing in Globe, Arizona; the income from my Nebraska farm to go to my mother during her life.

"Said Grace I. Humphries to be appointed administratrix without bond.

"THOMAS C. NOLAN."

and sent a copy to respondent. A few months previous to this time he had informed her that he was in

love with her, and was having trouble with his wife, but did not in any manner intimate to her that he intended to leave her his property, nor was the matter discussed between them before the execution of the will. The first time that she saw him, after she received a copy of the will, she objected to the fact that he had mentioned her therein as his future wife, saying he was putting her in a bad light by leaving her his property, to which he replied that he wanted her to have everything he owned, as he had already made a division of community property with his wife. Respondent never at any time promised to marry him if he would make a will in her favor, nor asked him to make such a will, nor discussed the subject at all. It was, so far as the evidence shows, entirely of his own desire and volition that he made the will in the form in which it was made. Decedent and his wife separated some time in the summer of 1931, and in the spring of 1932 he filed an action for divorce in the superior court of Yavapai county, which was dismissed on his motion. On June 2, 1932, a decree of divorce in favor of decedent was entered in the Court of the First Instance of the District of Bravos, State of Chihuahua, Mexico, and on June 4, 1932, decedent and respondent were married at Las Cruces, New Mexico. After this marriage they went to West Point, Nebraska, where they lived until the time of his death, although they made frequent trips to Arizona for the purpose of visiting friends.

It was in evidence that decedent was in good health at the time his will was made, that he was a man of strong character, firm in his decisions, and not easily swayed nor influenced. At that time he was proximately fifty-four years of age, while respondent was about twenty-eight. We shall refer to such other testimony as appears in the record as is necessary from time to time.

There is no question that the will was written entirely by decedent, and that with one possible exception it was in proper form and sufficient on its face.

The objections made to its probate are threefold, (a) that a will of this nature is against public policy, (b) that it was executed under the undue influence of respondent, and (c) that the words "to my future wife Grace I. Humphries" do not, as a matter of law, sufficiently describe the beneficiary under the will.

■ So far as (b) is concerned, we think the trial court was fully justified in finding that decedent was not unduly influenced by respondent as to the making of the will. She testified positively and distinctly that she had never asked him to make any kind of a will, let alone one in her favor; that she had never discussed the subject of the making of a will with him before it was executed, and that she had no knowledge that he intended to make a will in her favor until he sent her a copy of the one which he had already executed. There is no evidence directly contradicting this testimony. It is true there is in the record a great mass of evidence which shows that respondent and decedent were close friends from 1926 until the time the will was executed; that the feeling of friendship had grown into a warmer one, and that they had at times been together under circumstances which made it possible for their relations to have become illicit, although there is no direct evidence that their friendship had reached that point, and a positive denial by respondent that it had. But this is utterly insufficient to establish, as a matter of law, that the will was made under the undue influence of respondent.

■■ Nor do we think the description of respondent as "my future wife" makes the will invalid. It is contended that the use of these words made the devise conditional, so that respondent could only take if, at the time of the death of decedent, she was his

surviving spouse, and that since the court found that the decree of divorce, and necessarily the subsequent marriage, was invalid, the will failed for lack of a beneficiary. The question is whether these words were intended as a phrase of description merely, or as a condition. It would extend this opinion to unnecessary length to cite all the cases which have passed upon similar situations. We think the rule to be applied is well stated in the case of *In re Chambers' Estate,* 112 Misc. 551, 183 N. Y. Supp. 526, 530, where the court said:

" . . . where a testator describes a relationship which he knows does not exist but identifies the object of his bounty by name, he will be deemed to have made his benefactions with a knowledge of the nonexistence of the described relation."

At the time the will was made, decedent well knew that the relationship he described did not exist, and very carefully added the name of respondent. Cases involving similar situations are *Brack* v. *Boyd,* 202 Ill. 440, 66 N. E. 1073; *Dicke* v. *Wagner,* 95 Wis. 260, 70 N. W. 159. In the case of *Charlton* v. *Miller,* 27 Ohio St. 298, 22 Am. Rep. 307, the language was "to my intended wife, Elizabeth Jennings." After the will was made decedent and the beneficiary were married. Some five years later he obtained a divorce from her on the ground of desertion. It was contended that the bequest in her favor never took effect, or else was revoked by the divorce. The court said:

" . . . The bequest is made in absolute and unconditional terms, so far as expressed in the language of the will, and cannot be evaded or overcome by mere argumentative inferences drawn from words of the will not used for any such purpose. Had the testator died before the marriage contemplated, the right of the plaintiff to the bequest cannot be doubted, for the marriage was not made a condition precedent to the legacy. Nor is the case different if, after marriage,

she ceases to be his wife, for the legacy is not conditioned upon her survivorship as his widow. . . . ''

We are satisfied that the words in the will were words of description and not of condition.

■■ The last, and the most important contention, is that the will is void as against public policy. This is based on the proposition that any agreement which tends to interfere with or destroy an existing marriage is void as against public policy. The rule as stated is undoubtedly a correct one. The question, however, is whether the will at the time it was made did have a tendency to destroy the marriage existing between decedent and petitioner. We think petitioner has, in her argument, confused cause and effect. It is only where the agreement is a cause, no matter how remote, of the contemplated or actual dissolution of the marriage relation, that it is against public policy, not when it is an effect thereof. In the present case the facts show that the will was the result of a determination already reached by decedent to divorce his wife, and in no way a cause of that determination or of his attempt to carry it into effect. The general rule is that in the absence of statutory provision limiting it, a man may dispose of his property as he sees fit, regardless of the fact that the prevailing code of morals may consider such disposition as unwarranted from any standpoint. As was said by the Supreme Court of Washington in *Re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385, 387, quoting from *Boughton* v. *Knight,* 6 Moak, Eng. R., 349:

'' 'He may disinherit, either wholly or partially, his children, and leave his property to strangers, to gratify his spite, or charities to gratify his pride, and we must give effect to his will, however much we may condemn the course he has pursued.' ''

Assuming for the sake of the argument, although it is expressly denied by respondent, that she was de-

cedent's mistress, there are many cases which hold specifically that a bequest to a mistress is not invalid because of the fact of the illegal cohabitation. *Fox* v. *Eaglin*, 132 Kan. 395, 295 Pac. 662; *In re Mondorf's Will*, 110 N. Y. 450, 18 N. E. 256; *Arnault* v. *Arnault*, 52 N. J. Eq. 801, 31 Atl. 606. We are of the opinion that the court properly upheld the probate of the will in question.

Respondent made a cross assignment of error. She filed a statement of costs, which included an item of $850 for attorney's fees for services in resisting the contest. Petitioner filed exceptions on the ground that the amount claimed was unreasonable and excessive. The court disallowed the item of attorney's fees entirely. Section 3908, Revised Code of 1928, reads so far as material to the point in issue, as follows:

"Liability for fees and expenses on contest. The fees and expenses must be paid by the party contesting the validity or probate of the will, if the probate is confirmed. . . . "

██ The question is whether the words "fees and expenses" in the statute include attorney's fees. We are of the opinion that they do, and that the court should have allowed respondent a reasonable attorney's fee for resisting the contest.

██ We further think that the cost of procuring the authenticated copy of the Mexican divorce decree was properly allowed under the facts of the case.

The judgment of the lower court is affirmed in all respects except as to the disallowance of any attorney's fee, and is reversed and remanded as to that, with instructions to fix and allow a reasonable attorney's fee for counsel for respondent.

ROSS, C. J., and McALISTER, J., concur.