2012 ND 40

**In the Matter of the ESTATE OF
Lee S. PAULSON, Deceased**

**Carmen Paulson, Michael Paulson, Kim
Paulson, Charlene (Paulson) Johnson,
and Lynn Paulson, Appellants,**

v.

**Robyn Risovi, Appellee**

No. 20110154.

Supreme Court of North Dakota.

Feb. 21, 2012.

Rehearing Denied March 26, 2012.

David S. Maring, Bismarck, ND, for appellants.

Sara K. Sorenson, West Fargo, ND, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1]   Lee Paulson's mother and siblings ("the Paulson family") appealed from district court orders interpreting the will of Lee Paulson in favor of his fiancee, Robyn Risovi, denying a motion for reconsideration, and ordering distribution of Lee Paulson's estate.  We affirm.

### I.

[¶ 2]   Lee Paulson and Risovi were engaged to be married, with a wedding set for July 18, 2009.  On June 26, 2009, Lee Paulson and Risovi executed an antenuptial agreement.  The antenuptial agreement contained several terms: an agreement by Lee Paulson to name Risovi as the beneficiary of his life insurance policy, an agreement by Lee Paulson that his will would transfer specific real property to Risovi, and an agreement by Lee Paulson to establish a testamentary trust for the benefit of Risovi's daughter.  On the same date, Lee Paulson executed a will.  The will established the trust for Risovi's daughter, devised real property to "my wife, Robyn," bequeathed all of Lee Paulson's tangible personal property to "my spouse, Robyn," if she survived him, and devised his residuary estate to "my spouse, if my spouse survives me[.]"  Article Six of the will outlined the definitions governing the will, and provided, "My spouse's name is Robyn Risovi and all references in this Will to 'my spouse' are to her only."  A footnote followed this statement: "This Will has been prepared in anticipation of the upcoming marriage of ... Lee Paulson

and Robyn Risovi set for July 18, 2009." Lee Paulson died on July 15, 2009, three days before the scheduled wedding.

[¶ 3] Risovi filed a petition for construction of Lee Paulson's will, and the Paulson family also filed a petition for construction of the will. The district court held a hearing on the petitions and found Lee Paulson's will was unambiguous, Risovi was an unconditional devisee of the will, and she was entitled to take under the will. The district court found the definition and footnote in Article Six of the will did not manifest an intent to have the will conditioned upon the marriage, but described the beneficiaries and the circumstances surrounding the drafting of the will. The district court declined to read the antenuptial agreement together with the will to determine Lee Paulson's testamentary intent, as encouraged by the Paulson family, because the antenuptial agreement was not incorporated into the will by reference. The Paulson family appealed, and the appeal was remanded to determine if the estate was supervised. The district court entered an order for supervision, and this Court dismissed the Paulson family's appeal without prejudice. The Paulson family moved for reconsideration, which was denied. The district court entered orders distributing the estate according to Lee Paulson's will and the court's previous order and staying distribution pending the current appeal.

## II.

[¶ 4] "We decide for ourselves the construction of an unambiguous will." *Estate of Zimbleman*, 539 N.W.2d 67, 70 (N.D.1995). Our purpose in construing a will is to determine the testator's intent "from a complete consideration of the will given the surrounding circumstances." *Id.* at 71. The testator's intent as expressed in the will controls the legal effect of the

testator's dispositions. N.D.C.C. § 30.1–09–03. If the will's language is clear and unambiguous, the testator's intent is ascertained from the language of the will and not from extrinsic evidence. *Estate of Neshem*, 1998 ND 57, ¶ 7, 574 N.W.2d 883. Whether a will contains an ambiguity is a question of law for the court to decide. *Id.* at ¶ 8. Questions of law are fully reviewable on appeal. *Bladow v. Bladow*, 2005 ND 142, ¶ 9, 701 N.W.2d 903.

### A.

[¶ 5] The Paulson family argues the district court erred by interpreting Lee Paulson's will in favor of Risovi because the will and antenuptial agreement unambiguously establish the devises to Risovi were contingent upon her marriage to Lee Paulson.

[¶ 6] If the language of a will is clear and unambiguous, the testator's intent must be determined from the four corners of the will itself. *Neshem*, 1998 ND 57, ¶ 7, 574 N.W.2d 883. "Whether an ambiguity exists in a will is a question of law for this court to decide." *Zimbleman*, 539 N.W.2d at 71. A will provision is ambiguous if it can reasonably be interpreted in more than one sense. *Estate of Brown*, 1997 ND 11, ¶ 15, 559 N.W.2d 818. If a will is ambiguous, extrinsic evidence may be admitted to help clarify the ambiguity. *Id.*

[¶ 7] Article Six of the will states, in part, "My spouse's name is Robyn Risovi and all references in this Will to 'my spouse' are to her only." A footnote to this definition states, "This Will has been prepared in anticipation of the upcoming marriage of … Lee Paulson and Robyn Risovi set for July 18, 2009." The Paulson family argues this footnote shows Lee Paulson intended the devises to Risovi to be conditioned upon the marriage, and the devises to Risovi must fail because the

marriage never occurred. Risovi responds this language is descriptive, not conditional, and establishes Lee Paulson intended the will to be effective before and after the marriage.

[¶ 8] "An estate may be granted upon a condition, either express or implied, upon performance or breach of which the estate shall either commence, be enlarged, or be defeated." *Ruud .v. Frandson,* 2005 ND 174, ¶ 7, 704 N.W.2d 852 (quoting *Blevins v. Pittman,* 189 Ga. 789,.7 S.E.2d 662, 664 (1940)). A condition precedent must occur before an interest can vest, and if the condition does not occur, the conditional devise is inoperative. *Zimbleman,* 539 N.W.2d at 71. Conditions in a will are disfavored, and courts ordinarily decline to imply conditions in a will unless specific words manifest an intent to impose conditions. 97 C.J.S. *Wills* §§ 1554–55 (2011). Words associated with creating a condition precedent include "on condition," "so that," "provided," and other similar language. *Id.* at § 1554.

[¶ 9] We have previously considered what constitutes a condition precedent in a will. In *Zimbleman,* the testatrix's will provided any of her children who wanted the land she owned at her death could purchase the land "upon the agreement of the remaining children[.]" *Zimbleman,* 539 N.W.2d at 69–70. This Court held the provision created a condition precedent because all of the testatrix's children had to agree to a sale before a child could purchase the land. *Id.* at 71. Because an agreement could not be reached among the children, the devise or the right to purchase the land failed. *Id.* Unlike *Zimbleman,* there is no language in Lee Paulson's will to create a condition precedent. The Paulson family focuses on the Article Six footnote, which states the will was "prepared in anticipation of the upcoming marriage of ... Lee Paulson and Robyn Risovi[.]" The footnote does not use language to indicate the devises were conditional; such as "on condition," "provided," or "if." Such language could have been included if Lee Paulson intended the devises to Risovi to be contingent upon their marriage. "[N]o presumptions are indulged by law to create conditions precedent in a will." 97 C.J.S. *Wills* § 1577.

[¶ 10] Rather, the footnote evidences Lee Paulson's intent that the will be operative both before and after the marriage. Section 30.1–06–01(1)(b), N.D.C.C., provides that a surviving spouse who married the testator after the testator executed the will is only entitled to an intestate share of the estate unless "[t]he will expresses the intention that it is to be effective notwithstanding any subsequent marriage[.]" Lee Paulson ensured his will would be effective after his marriage to Risovi by including the phrase "in anticipation of the upcoming marriage[.]" Other courts have also reached this conclusion when interpreting similar will provisions. *See Brown v. Cronic,* 266 Ga. 779, 470 S.E.2d 682, 684 (1996) (holding devises to the testator's "wife to be" were not contingent upon the marriage but rather "evidenced that [the testator's] will was made in contemplation of his marriage"); *In re Nichols' Estate,* 428 So.2d 372, 372–73 (Fla.Ct.App.1983) (holding a will made "in contemplation of [a] marriage" did not create a contingency, "but only refers to the fact that the will was intended to be valid even after, or notwithstanding, the occurrence of the intended, or expected future event").

[¶ 11] The Article Six definition of "spouse" and references to Risovi as "my wife" and "my spouse" are descriptive terms and do not create a condition precedent. In *Neshem,* this Court held a devise was not void simply because the devisee did not fit the description in the will. *Neshem,* 1998 ND 57, ¶ 9, 574 N.W.2d 883.

The testatrix referred to her stepson as her "son" in the will provision describing her family. *Id.* at ¶ 3. We held the testatrix's description of her stepson as her "son," when reading the will to give meaning to each word and phrase, manifested her intent to treat him as her natural son under the will. *Id.* at ¶ 9. We noted the testatrix's specific description should not be ignored simply because the will could have been worded differently. *Id.* Other courts have held similar descriptive words do not create a condition limiting the devise or bequest. *See Barnstable v. United States Nat'l Bank,* 232 Or. 36, 374 P.2d 386, 388 (1962) ("When the testator describes a relationship he knows did not exist ... but identifies the object of his bounty by name, he will be deemed to have made his benefaction with a knowledge of the nonexistence of the relationship described."); *In re Sussman's Will,* 60 N.Y.S.2d 609, 610–11 (N.Y.Sur.1945) (holding that a gift made to a specifically-named individual is not made conditional by subsequent words or phrases which further identify the intended beneficiary); *In re Nolan's Estate,* 56 Ariz. 353, 108 P.2d 385, 387 (1940) (holding a bequest to "my future wife" did not create a condition in the testator's will, but merely reflected "[D]ecedent well knew that the relationship he described did not exist, and very carefully added the name of respondent."); *In re Chambers' Estate,* 112 Misc. 551, 183 N.Y.S. 526, 527, 531 (N.Y.Sur.1920) (holding devises to "adopted children" and "my children" who were not legally adopted by the testator were valid because the testator was deemed to have made the devises with the knowledge that the relationship described did not exist). We hold the terms "spouse" and "wife" as used and defined in Lee Paulson's will were descriptive of Risovi and did not create a condition precedent to her right to receive the devises. We also hold the Article Six foot-note did not create a condition precedent, but rather evidenced Lee Paulson's intent that the will be effective both before and after the marriage. The district court did not err in finding the will was unambiguous and the devises to Risovi were unconditional.

### B.

[¶ 12] Having determined the will is unambiguous, we turn to the Paulson family's argument that the antenuptial agreement was contemporaneously executed with the will, and therefore should be read with the will. Risovi responds that the two instruments should not be construed together because the will did not incorporate the antenuptial agreement by reference.

[¶ 13] The contemporaneous execution rule requires instruments related to the same transaction and executed at the same time to be read and construed together. *Nantt v. Puckett Energy Co.,* 382 N.W.2d 655, 658 (N.D.1986). We have applied this rule when interpreting contracts, *see id.; Addy v. Addy,* 456 N.W.2d 506, 509, 511 (N.D.1990); *Maragos v. Norwest Bank Minnesota, N.A.,* 507 N.W.2d 562, 565 (N.D.1993), and have not determined the appropriateness of the doctrine when interpreting a will.

[¶ 14] In determining the applicability of the contemporaneous execution rule, other courts have held parol evidence is inadmissible to explain the terms of an unambiguous instrument, and extrinsic evidence may not be used to create an ambiguity. *See Westmoreland–LG&E Partners v. Virginia Elec. and Power Co.,* 254 Va. 1, 486 S.E.2d 289, 294 (1997) ("[P]arol evidence may not be used to first create an ambiguity and then to remove it."); *Union Elec. Co. v. Fundways, Ltd.,* 886 S.W.2d 169, 170 (Mo.Ct.App.1994) ("Extrinsic evi-

dence of a prior or contemporaneous agreement is generally not admissible to vary, add to, or contradict the terms of an unambiguous and complete written document, nor may such parol evidence be used to create ambiguity in an otherwise unambiguous document."); *Georgia Iron & Coal Co. v. Ocean Accident & Guarantee Corp.,* 133 Ga. 326, 65 S.E. 775, 777 (1909) ("[P]arol contemporaneous evidence ... is not admissible to both create and explain an ambiguity[.]"); *but see In re Estate of Crooks,* 266 Ill.App.3d 715, 202 Ill.Dec. 861, 638 N.E.2d 729, 732 (1994) (holding a will, revocable trust, and quitclaim deeds could be construed together to ascertain the decedent's estate plan because the instruments were contemporaneously executed on the same date). This principle is consistent with our prior holdings that extrinsic evidence is inadmissible if a will is unambiguous. *See Neshem,* 1998 ND 57, ¶ 7, 574 N.W.2d 883; *Brown,* 1997 ND 11, ¶ 16, 559 N.W.2d 818. Because we hold the will is unambiguous, the antenuptial agreement cannot be admitted to "create an ambiguity and then to remove it." *Partners,* 486 S.E.2d at 294. Nor was the antenuptial agreement incorporated by reference to allow it to be construed with the will. *See* N.D.C.C. § 30.1–08–10.

▮ [¶ 15] In any event, an antenuptial agreement does not necessarily govern the distribution of property if the parties never married because such an agreement is only effective upon marriage. *See* N.D.C.C. § 14–03.1–04. The antenuptial agreement signed by Lee Paulson and Risovi recognized this limitation on the effect of the agreement by stating, "This Agreement shall become effective only on the solemnization of the parties' marriage." Conversely, a will may devise property to an individual even if the contemplated marriage did not take place. *See* discussion *supra* ¶¶ 10–11. The district court

did not err in declining to construe the two instruments together. Because the will is unambiguous, the district court also did not err by excluding extrinsic evidence. *See Neshem,* 1998 ND 57, ¶ 7, 574 N.W.2d 883.

### C.

▮ [¶ 16] The Paulson family also argues N.D.C.C. § 30.1–10–05, part of the Uniform Probate Code as enacted in North Dakota, should be interpreted to allow reformation of Lee Paulson's will. The Paulson family acknowledges the statute was not raised before the district court, but argues the statute supplements the family's argument that the district court should have allowed extrinsic evidence. If this Court determines the statute constitutes a new issue on appeal, the Paulson family requests application of the "plain error" doctrine to allow consideration of the statute.

[¶ 17] This Court announced the "plain error" doctrine in paragraph one of the Syllabus of the Court in *Megarry Bros. v. City of St. Thomas,* 66 N.W.2d 704, 704–05 (N.D.1954): "Ordinarily questions not raised at the trial will not be considered on appeal, but where a pertinent statute has been overlooked resulting in plain error that is of public concern, this court will consider the error though it be not brought to our attention by either of the parties." Although it may be debatable whether the effective date of a statute is a public concern to allow application of the "plain error" doctrine, the doctrine is inapplicable if no error has occurred.

[¶ 18] Section 30.1–10–05, N.D.C.C., states:

Reformation to correct mistakes. The court may reform the terms of a governing instrument, even if unambiguous, to conform the terms to the transferor's intention if it is proved by clear and

convincing evidence that the transferor's intent and the terms of the governing instrument were affected by a mistake of fact or law, whether in expression or inducement.

This statute went into effect on August 1, 2009. 2009 N.D. Sess. Laws ch. 283, § 23. Lee Paulson's will was executed on June 26, 2009, and Lee Paulson passed away on July 15, 2009. The Paulson family asserts section 30.1–10–05 retroactively applies to the will under N.D.C.C. § 30.1–35–01(2)(b), which states:

Time of taking effect—Provisions for transition.

. . . .

2. Except as provided elsewhere in this title, on the effective date of this title or any amendment to this title:

. . . .

b. The title or amendment applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this title.

The appropriate provision of N.D.C.C. § 30.1–35–01 to determine the applicability of the reformation statute to Lee Paulson's will is section 30.1–35–01(2)(d), which provides:

d. An act done before the effective date in any proceeding and any accrued right is not impaired by this title or the amendment. If a right is acquired, extinguished, or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before the effective date, the provisions shall remain in force with respect to that right.

[¶ 19] This Court has not interpreted the meaning of "accrued right" within the context of this statute. Section 1–02–13, N.D.C.C., states, "Any provision in this code which is a part of a uniform statute must be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." In applying this statute, we have stated, "We interpret uniform laws in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions in a uniform law." *Estate of Allmaras*, 2007 ND 130, ¶ 13, 737 N.W.2d 612. Colorado has enacted the Uniform Probate Code, and its code contains a provision almost identical to section 30.1–35–01(2)(d): "An act done before [the effective date] in any proceeding and any accrued right is not impaired by this code." Colo.Rev.Stat. § 15–17–101(2)(d) (2010). In applying this provision, Colorado courts have construed "accrued right" to mean "vested right" and "prior existing right." *Estate of Barnhart*, 38 Colo.App. 544, 563 P.2d 972, 974 (1977), *aff'd*, 194 Colo. 505, 574 P.2d 500 (1978); *Estate of Novitt*, 37 Colo.App. 524, 549 P.2d 805, 807 (1976).

[¶ 20] Consistent with this interpretation, we determine "accrued right" as used in section 30.1–35–01(2)(d) includes rights that vested prior to the effective date of an amendment to N.D.C.C. tit. 30.1. *Compare Myaer v. Nodak Mutual Ins. Co.*, 2012 ND 21, ¶¶ 13, 16, 812 N.W.2d 345 (interpreting "accrue" within the context of insurance policy commissions to mean "grow, increase, or augment"). Lee Paulson passed away on July 15, 2009. The district court properly concluded Risovi is an unconditional devisee entitled to take under Lee Paulson's will. Risovi's right to the devises to her vested at Lee Paulson's death. *See Sjostrand v. N.D. Workers Comp. Bureau*, 2002 ND 125, ¶ 14, 649 N.W.2d 537 ("A vested right is an immediate or fixed right to present or future enjoyment that does not depend upon an event that is uncertain.") (Citation omit-

ted). Because N.D.C.C. § 30.1–10–05 went into effect on August 1, 2009, after Risovi's right vested, it cannot be applied to reform Lee Paulson's will. *See* N.D.C.C. § 30.1–35–01(2)(d).

### III.

[¶ 21]   We affirm the district court orders.

[¶ 22] WILLIAM W. McLEES, D.J., STEVEN E. McCULLOUGH, D.J., DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

[¶ 23] The Honorable STEVEN E. McCULLOUGH, D.J., and the Honorable WILLIAM W. McLEES, D.J., sitting in place of MARING, J., and KAPSNER, J., disqualified.

484

[For publication purposes, this page was intentionally left blank.]