# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 14

In the Matter of the Estate of Randall M. Moe a/k/a Randy M. Moe, Deceased

Amanda Miller, Personal Representative,　　　　　　Petitioner and Appellee

　　　v.

Cynthia Almer,　　　　　　　　　　　　Respondent and Appellant

## No. 20240197

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Charles B. Neff, Jr., Judge.

REVERSED.

Opinion of the Court by Bahr, Justice.

Aaron J. Weber (argued), Watford City, ND, and Andrew D. Cook (on brief) and Delvin J. Losing (on brief), West Fargo, ND, for petitioner and appellee.

William C. Black, Bismarck, ND, for respondent and appellant.

**Bahr, Justice.**

[¶1]   Cynthia Almer appeals from a district court judgment dismissing her petition for formal probate of Randall Moe's estate. On appeal, Almer argues the court erred in finding a mistake of fact or law affected the specific terms of Moe's Last Will and Testament and the will did not reflect Moe's intent. We reverse.

I

[¶2]   Moe was married from 1978 to 1981, during which time he had one child, Amanda Miller. After his divorce, Moe was in a relationship with Almer. Moe executed a Last Will and Testament on December 7, 1989, shortly after his relationship with Almer ended. Miller was ten years old when Moe executed the will. Moe gave his will to Almer, who kept the will in her safe.

[¶3]   Moe's one-page will includes the following clauses:

FIRST: I hereby revoke any Will or Codicils formerly made by me.

SECOND: I Will and Direct that all my debts and funeral expenses be paid as soon as may be after my decease.

THIRD: I Devise and Bequeath all of my Real Property and all of my Personal Property of every kind and character, whatsoever and wherever situated, to Cynthia Almer.

FOURTH: If Cynthia Almer is deceased at the time of my death, I Devise and Bequeath all of my Estate of every kind and character, whatsoever and where-ever situated, including all real Property and all Personal Property to my Daughter, Amanda [Miller].

FIFTH: I Will and Direct that the Guardian of the Person and Conservator of the Estate of my Daughter, Amanda [Miller], shall be

Cynthia Almer, and that she may serve without bond. Said Guardian is to have full authority to use any property inherited or owned by my Daughter, Amanda [Miller], for her support and education as she deems fit and proper.

SIXTH: If Cynthia Almer is deceased as the time of my death, or is unwilling or unable to serve, I Will and direct that the Guardian of the Person and Conservator of the Estate of my Daughter, Amanda [Miller], shall be my Brother, Arthur Moe, and that he may serve without bond. Said Guardian is to have full authority to use any property inherited or owned by my Daughter, Amanda [Miller], for her support and education as he deems fit and proper.

SEVENTH: I Will and Direct that the Personal Representative of my Estate shall be Cynthia Almer, and that she may serve without bond.

If Cynthia Almer is deceased at the time of my death, or is unable or unwilling to serve, I Will and Direct that the Personal Representative of my Estate shall be my Brother, Arthur Moe, and that he may serve without bond.

[¶4] Moe died in July 2022. The district court appointed Miller as personal representative of Moe's estate based on her application for informal appointment. In November 2022, Almer filed a petition for formal probate of the estate and to set aside Miller's appointment as personal representative. Miller requested the court reform the will to facilitate Moe's intent to pass his estate to Miller and to allow Miller to continue as personal representative of the estate.

[¶5] The district court held a bench trial in January 2024 regarding the will. In its order, the court noted the authenticity of Moe's will was not contested and Miller concedes Moe validly executed the will. The court found Moe's will valid and enforceable. It further found Moe did not revoke the will. However, the court concluded the will was affected by a mistake of law or fact and Moe intended to provide his estate to Miller through a guardianship by Almer until Miller became eighteen. The court reformed the third clause of the will to read:

THIRD: I devise and bequeath all of my real property and all of my personal property of every kind and character, whatsoever and wherever situated to Cynthia Almer as a trustee for the sole benefit of Amanda and contingent on Amanda being a minor at the time of my death, otherwise, to Amanda outright.

The court also reformed the will to appoint Miller as the personal representative of Moe's estate.

## II

[¶6]   Almer argues the district court erred in finding clear and convincing evidence showed the will was affected by a mistake of fact or law and the will did not express Moe's intent. Almer asserts the court erred by finding the third and fifth clauses of the will are inconsistent and by not focusing on Moe's intent at the time he executed the will.

## A

[¶7]   "Determining a party's intent and whether a mistake of fact or law exists are questions of fact, which are subject to the clearly erroneous standard of review." *In re Matthew Larson Tr. Agreement*, 2013 ND 85, ¶ 9, 831 N.W.2d 388. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, 'there is no evidence to support it, or when, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.'" *Matter of Est. of Almer*, 2024 ND 102, ¶ 9, 7 N.W.3d 281 (quoting *Larson*, at ¶ 9).

[¶8]   Reformation of a will is an equitable remedy designed to give effect to the testator's intention and to prevent unjust enrichment. Restatement (Third) of Property (Wills & Don. Trans.) § 12.1 cmt. b (2003); *cf. Larson*, 2013 ND 85, ¶ 10 ("Reformation of a trust is an equitable remedy designed to correct an error or defect in a trust document so it reflects the settlor's actual intent."). Section 30.1-10-05, N.D.C.C., authorizes a court to reform a will:

The court may reform the terms of a governing instrument, even if unambiguous, to conform the terms of the transferor's intention if it

3

is proved by clear and convincing evidence that the transferor's intent and the terms of the governing instrument were affected by a mistake of fact or law, whether in expression or inducement.

"Clear and convincing evidence leads to a firm belief or conviction that the allegations are true." *Larson*, at ¶ 10. "Although it is a higher standard of proof than proof by the greater weight of the evidence, the evidence presented need not be undisputed to be clear and convincing." *Id*. (quoting *In re Disciplinary Action Against McGuire*, 2004 ND 171, ¶ 8, 685 N.W.2d 748).

[¶9] The relevant inquiry is the testator's intention at the time the testator executed the will. *Mercy Hosp. of Williston v. Stillwell*, 358 N.W.2d 506, 510 (N.D. 1984) ("The testator's intent at the time he executed his will is the primary consideration in the instant case."); *In re Glavkee's Est.*, 34 N.W.2d 300, 305 (N.D. 1948) ("The intent of the testator which must be discovered, if possible, and carried out means his actual personal intent at the time he executed the will[.]"); *see also* Restatement (Third) of Property (Wills & Don. Trans.) § 12.1 cmt. g (2003) (stating the equitable remedy of reformation may be available if it is established by clear and convincing evidence (1) that a mistake of fact or law affected the will and (2) "what the donor's actual intention was."). When construing a will, if the will is clear and unambiguous, the testator's intent is determined from the language of the will without the need for extrinsic evidence. *In re Est. of Paulson*, 2012 ND 40, ¶ 4, 812 N.W.2d 476. However, reformation cases are inherently different from construction cases, as they may involve adding or deleting language from the will, making reliance on extrinsic evidence essential. *See Larson*, 2013 ND 85, ¶ 26; *see also* Restatement (Third) of Property (Wills & Don. Trans.) § 12.1 cmt. b (2003). Thus, the higher standard of clear and convincing proof is required to guard against erroneous factual determinations. *See* Restatement (Third) of Property (Wills & Don. Trans.) § 12.1 cmt. e (2003). The party seeking reformation bears the burden of showing a mistake of law or fact by clear and convincing evidence. *Zabolotny v. Fedorenko*, 315 N.W.2d 668, 671 (N.D. 1982); *see also* Restatement (Third) of Property (Wills & Don. Trans.) § 12.1 cmt. e (2003).

[¶10] In a reformation case, a court may consider direct evidence of the testator's intent and relevant extrinsic evidence. Restatement (Third) of Property (Wills & Don. Trans.) § 10.2 (2003) ("In seeking to determine the donor's intention, all relevant evidence, whether direct or circumstantial, may be considered, including the text of the donative document and relevant extrinsic evidence."). Direct evidence of the testator's intention includes

> documents and testimony evidencing the donor's intention; the donor's own declarations of intention, written or oral; contents of the drafting agent's files; and written or oral statements made to the donor by the drafting agent or another concerning the contents or effect of the document, to the extent that the donor acquiesced, silently or expressly, in the other person's statements.

*Id.* at § 10.2 cmt. f (2003). The court may also consider extrinsic evidence regarding the circumstances surrounding the execution of the will if the evidence bears on the testator's intention. *Id.* at § 10.2 cmt. d (2003) ("Extrinsic evidence of the circumstances surrounding the execution of the donative document that might bear on the donor's intention, directly or circumstantially, may always be considered."). "Although the primary focus is on the donor's intention at the time of execution of the donative document, post-execution events can sometimes be relevant in determining the donor's intention." *Id.* at § 10.2 cmt. g (2003). However, the post-execution evidence must be relevant to the testator's intention at the time of execution. *Id.* Thus, while a court may consider extrinsic evidence, pre- or post-execution, the extrinsic evidence must be relevant to the testator's intention at the time of execution. *Id.* at § 10.2 cmts. d, g (2003).

B

[¶11] The district court granted Miller's petition to reform Moe's will after finding Miller presented clear and convincing evidence the will was affected by a mistake of fact or law. The court did not state whether there was a mistake of fact or law; however, it concluded the attorney who prepared Moe's will made "a mistake in drafting the will." The court later referenced "inartful drafting" by the attorney. "At the end of the day," the court wrote, "the court sees a will that was mistaken in the intent of [Moe]."

[¶12] When read in isolation, the third clause of the will unambiguously devises Moe's estate to Almer. The district court wrote, "The third clause shows an intention to leave all he had to Cynthia Almer." Nevertheless, the court found Moe's "intention was to provide his estate to his only child, his daughter [Miller]." The court did so based on its conclusions the third and fifth clauses of the will are inconsistent and on the extrinsic evidence that Moe was very close to Miller and wanted to leave her everything.

1

[¶13] The district court focused on the third and fifth clauses of the will, seeing "the interplay between the clauses as a critical issue." The third clause provides:

> THIRD: I Devise and Bequeath all of my Real Property and all of my Personal Property of every kind and character, whatsoever and wherever situated, to Cynthia Almer.

The fifth clause provides:

> FIFTH: I Will and Direct that the Guardian of the Person and Conservator of the Estate of my Daughter, Amanda [Miller], shall be Cynthia Almer, and that she may serve without bond. Said Guardian is to have full authority to use any property inherited or owned by my Daughter, Amanda [Miller], for her support and education as she deems fit and proper.

[¶14] The district court concluded the third clause shows Moe intended to leave all he had to Almer. "However," the court wrote, "it is not consistent with the fifth clause, as that clause indicates an intention to provide for a guardian" for Miller. The court explained Miller did not need a guardian because she lived with her mother.

[¶15] One purpose of a will is to plan for possible, even if unlikely, future events. *See, e.g.*, *Paulson*, 2012 ND 40, ¶ 15 (discussing the devise of an estate in a will drafted in anticipation of marriage); N.D.C.C. § 30.1-09.1-07 (defining "alternative future interests," indicating a will can plan for future contingencies). Because Miller's mother could have passed away while Miller was a minor, it is possible Miller would need a guardian if Moe also passed away while Miller was

a minor. Nothing is inconsistent about Moe giving his estate to Almer and providing a guardian for Miller in the event both of her parents passed away.

[¶16] The district court further concluded that Moe inconsistently attempted to "give all his property to two separate people" through the third and fifth clauses. Through the third clause, Moe unambiguously devised and bequeathed his property to Almer. Moe did not devise and bequeath any of his property to Miller through the fifth clause. Rather, he addressed the guardian's authority over "property inherited or owned" by Miller. The guardianship only became necessary if Miller's mother predeceased Moe while Miller was a minor. *See* N.D.C.C. § 27-20.1-15 (statute enabling the guardian of a child to oversee the child's property); *see also Black's Law Dictionary* 846 (12th ed. 2024) (defining a "guardian" as "[s]omeone who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy"). If Miller's mother passed away, Miller may have inherited property from her. It is also possible she could have inherited property from other family members.

[¶17] The district court wrote the third and fifth clauses are inconsistent because, absent extraordinary court intervention, Miller could not own property as a minor. First, had Miller inherited from her mother or another family member while Miller was a minor, it is very possible there would have been court intervention addressing the inheritance. Second, if it is inconsistent for there to be a guardianship, meaning Miller was a minor, and for Miller to own property, that would be an internal inconsistency in the fifth clause, not an inconsistency between the third and fifth clauses.

[¶18] The other clauses of the will must also be considered when determining Moe's intent. *See* Restatement (Third) of Property (Wills & Don. Trans.) § 10.2 cmt. b (2003) ("The text of a donative document must be read in its entirety."). In the fourth clause, Moe devises and bequeaths his estate to Miller *if* Almer is deceased at the time of his death. This clause is unambiguous—Moe bequeathed his estate to Miller only *if* Almer predeceased Moe. *Paulson*, 2012 ND 40, ¶¶ 8-9 (explaining an estate may be granted upon a condition and "if" is conditional language). Thus, the fourth clause shows Moe was not giving his property to two separate people but instead designating an alternative successor to his estate. If

7

Moe intended to give his estate to Miller, not Almer, he could have done so without the condition of Almer's death.

[¶19] Moreover, if Moe's bequest to Almer was made in her capacity as trustee, then the fourth clause should have bequeathed the property to the contingent guardian as trustee in the event of Almer's death, not to Miller. In the sixth clause, Moe designated an alternative guardian for Miller in the event Almer was unwilling or unable to serve. Yet the will does not treat Almer and the alternative guardian the same. The will does not bequeath Moe's property to the alternative guardian, indicating a distinction between Almer and the alternative guardian. Furthermore, despite Moe's will not devising and bequeathing his estate to the alternative guardian, the sixth clause includes the same language as the fifth clause regarding the guardian's authority over "property inherited or owned" by Miller. Because the alternative guardian would not inherit anything under Moe's will, this language indicates the "property inherited or owned" by Miller does not refer to Moe's estate.

[¶20] We conclude the will is not direct evidence that Moe intended to leave his estate to Miller if Almer was still alive.

2

[¶21] The district court wrote its findings regarding Moe's intention are reinforced by the extrinsic evidence introduced at trial.

[¶22] Addressing the circumstances surrounding Moe's execution of the will, the district court noted the only testifying witness present at the signing of the will was the drafting attorney's secretary. The witness testified it was the attorney's practice to discuss operation of the will prior to the client's signature, that she could not specifically recall if that occurred with Moe, and that Moe did not ask for any changes to the will. Nothing in this witness's testimony indicates the will is inconsistent with Moe's intention at the time he executed it.

[¶23] Addressing other circumstances surrounding Moe's execution of the will, the district court found Moe and Almer "dated from 1986 to 1989, and lived together until 1989." The court noted Almer's sons viewed Moe like a father, and

8

that although Moe moved out in 1989, he continued to visit Almer and assist with her sons. The court further found Moe executed the will a short time after Moe and Almer broke up and left it on Almer's counter in an envelope, stating, "This is for you." The court noted, "'This is for you' is open to vast interpretation." Although that is true, nothing in Almer's testimony or Moe's statement evidences Moe did not intend to bequeath his estate to Almer when he executed the will. The court even noted that Moe leaving his estate to Almer "is consistent with some of the testimony that in 1989, he still cared for [Almer], cared for her boys, and wanted to provide for her."

[¶24] Additional evidence regarding the circumstances surrounding Moe's execution of the will was Moe's "asset and financial status as of late 1989." There was testimony that in late 1989 Moe used a company pickup, "had a house, and was able to provide for himself and those who lived with him." The district court noted "it is undisputed that [Moe] had little to no assets that would have passed through probate at the time of the will's execution." Nothing about these circumstances indicates Moe did not intend to give his estate to Almer.

[¶25] Finally, Miller testified that in 1989 her parents were not on positive terms. Miller's testimony does not indicate Moe did not intend to bequeath his estate to Almer. In fact, one could argue Moe's negative relationship with Miller's mother could be a reason he might want to give his property to Almer, whom evidence indicates Moe still cared for and wanted to provide for.

[¶26] The remaining witnesses testified regarding Moe's close relationship with Miller, stating Miller was Moe's "pride and joy," "his world," "the light of his life," "the apple of his eye," and that Miller and her children—Moe's grandchildren—"were the most important people in his life." They also testified of statements Moe made indicating he did not have a will and Miller would get everything from his estate. However, these conversations occurred years or decades after Moe executed the will.

[¶27] For example, Moe's sister testified Moe told her in "a recent" conversation he did not have a will. The fact the conversation was recent indicates it was not around 1989 when Moe executed the will. That Moe purportedly did not recall

having a will provides no insight regarding his intentions when he executed the admittedly valid will.

[¶28] The testimony Moe stated Miller would get everything at best indicates his intention years after the will was executed; the testimony provides no insight into Moe's intention when he executed the will in 1989.

[¶29] Moe's financial advisor testified Moe designated Miller as the beneficiary on Moe's IRAs, checking account, and savings account. These events also occurred years after Moe executed the will. Moe started working with the financial advisor in 2006, seventeen years after Moe executed the will. The IRA accounts were set up between 2016 and 2017, over twenty-seven years after Moe executed the will. This post-execution evidence provides no insight into Moe's intention when he executed the will in 1989.

[¶30] Finally, there was testimony that Moe "was characterized as organized, thoughtful, and a planner," and that he "kept almost every important document in his safe." This evidence has no relevance to Moe's intention when he executed the will. As found by the district court, the authenticity and validity of the will is uncontested. The issue is Moe's intention when he executed the will, not whether he remembered he had a will or whether his intention changed later in his life. Even if Moe changed his intent after he executed his will, reformation would not be available to modify the terms of the will. *Matter of Est. of Meeks*, 4 Wash. App. 2d 255, 263-64, 421 P.3d 963 (2018) ("[R]eformation is not available to correct a failure to prepare and execute a document[.] Nor is reformation available to modify a document in order to give effect to the donor's post-execution change of mind[.]") (quoting Restatement (Third) of Property (Wills & Don. Trans.) § 12.1 cmt. h (2003)); *see also* Restatement (Third) of Property (Wills & Don. Trans.) § 10.2 cmt. g (2003) (stating "if the donor formed an intention at the time of execution, even if the donative document is amendable, the donor is not permitted to amend the document by later changing his or her mind without complying with the requirements for making such an amendment").

[¶31] Discussing the extrinsic evidence, the district court wrote "the timeframe can be important in this analysis." It wrote what Moe "said or did in 1989

10

certainly weighs heavily in determining if there was a mistake, but only somewhat as to intent." The court then wrote that Moe's "statements and actions in the years since can certainly provide evidence of his intent[.]"

[¶32] Later, the district court wrote, "While the court agrees that most of the focus should be on 1989, later statements of [Moe] show his intention for his estate. Multiple people testified that [Moe] indicated his intention for [Miller] to get everything." The court specifically noted it found the testimony of those witnesses highly credible. It then wrote, "The court views this [evidence] as highly impactful in that [Moe], *during these times*, is clearly thinking about passing along his estate, and the only person mentioned [is Miller]." (Emphasis added.)

[¶33] We conclude the district court misapplied the law when it considered the post-execution evidence. As demonstrated by the court's analysis, the court improperly considered Moe's intention years after he executed the will, not his intention when he executed the will. The issue is not witness credibility; the issue is Moe's intent when he executed the will. The post-execution evidence did not relate to Moe's intent *at the time* he executed the will. To the contrary, none of those witnesses knew about the will or testified that Moe made any statements to them about the terms of the will or his intention when he executed the will. At best, their testimony relates to Moe's thoughts or intent years or decades after he executed the will. The court erred as a matter of law by considering and relying on post-execution evidence unrelated to Moe's intention when he executed the will.

[¶34] We conclude the district court misapplied the law by considering post-execution evidence that did not relate to Moe's intent at the time he executed the will. We further conclude the court's finding Miller established by clear and convincing evidence that, at the time he executed the will, Moe intended to leave his estate to Miller is clearly erroneous. Therefore, we conclude that the court erred as a matter of law in reforming the will.

11

## III

[¶35]  We have considered the parties' other arguments and conclude they are unnecessary to our decision or are without merit. We reverse the district court's judgment reforming Moe's will.


[¶36] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr