2005 ND 174

**Karen RUUD, Plaintiff and Appellee**

v.

**Dan FRANDSON, Defendant
and Appellant**

**Judy Frandson, Jane MacLennan, and
Amy Frandson, Defendants.**

No. 20050049.

Supreme Court of North Dakota.

Oct. 18, 2005.

Rehearing Denied Nov. 9, 2005.

Robert J. Lamont, Lamont Law Firm, P.C., Minot, ND, for plaintiff and appellee.

Carol K. Larson, Pringle & Herigstad, P.C., Minot, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Dan Frandson appealed from a declaratory judgment holding he does not farm the cropland he inherited under his mother's will, thus enabling his sister, Karen Ruud, to exercise her option to purchase the cropland under a clause in the will. We affirm.

I

[¶ 2] Alice Frandson died testate in November of 1987. The last will and testament left certain parcels of real estate to her son Dan Frandson. Alice Frandson placed certain conditions on this bequest. The condition at issue in this case provides:

> In the event that Dan chooses not to farm any or all of the cropland during a twenty (20) year period following my death, then my daughters, together or separately, shall have the option to purchase any portion of that cropland at a price of $80.00 per acre through 1991, and at one-third of its appraised value if purchased after 1991, with all of the proceeds to go to my beloved son, Dan.

[¶ 3] Dan Frandson continued to live and work on the cropland from Alice Frandson's death in 1987 until 1991. In January 1991, Frandson left the farm and moved to Idaho. Frandson returned to the farm in February of 1993. While Frandson was away, he rented his farmland to a third party on a crop share basis. Frandson and the tenant entered into one-year crop share agreements for 1991 and 1992.

[¶ 4] Frandson returned and physically farmed the land until June of 1998. In 1998, Frandson and his wife attempted to obtain an operating loan and a loan to update the farm machinery. After failing to obtain the loan, Frandson entered into a crop share lease with his nephew, Jeffrey Ruud, for the 1998 crop year. Karen Ruud's husband and her son, Jeffrey

Ruud, were involved in negotiating the terms of the crop share lease. At Frandson's request, the term of the lease ran through the conclusion of the 20–year clause in the will. The parties entered into a lease and Frandson sold much of his farm equipment to Jeffrey Ruud. Frandson again moved to Idaho.

[¶ 5] On September 25, 2002, Karen Ruud's attorney sent a letter to Frandson informing Frandson that Karen Ruud desired to exercise her option to purchase the cropland based on the clause in the will. Frandson did not recognize the letter as a valid exercise of the option and Karen Ruud commenced this action. Ruud requested a declaratory judgment holding Frandson does not farm the cropland, thus allowing Karen Ruud to exercise her option to purchase the cropland in accordance with the terms of the will. The trial court found that Alice Frandson's intent was for Dan Frandson to cultivate the land, till the soil, and raise the crops himself. The trial court ordered Dan Frandson to sell the cropland to Karen Ruud in accordance with Alice Frandson's will.

II

[¶ 6] "We decide for ourselves the construction of an unambiguous will." *Matter of Estate of Zimbleman,* 539 N.W.2d 67, 70 (N.D.1995). "The testator's intent, as expressed in the will, controls the legal effect of the testator's dispositions." *Id.* at 70–71; N.D.C.C. § 30.1–09–03. When we construe a will, our purpose "is to ascertain the testator's intent as it appears from a complete consideration of the will given the surrounding circumstances." *Zimbleman,* 539 N.W.2d at 71. The testator's intent is determined "from the language of the will" if the language of the will is clear and unambiguous. *Id.* "Whether an ambiguity exists in a will is a question of law for this court to decide."

*Id.* Questions of law are fully reviewable, de novo, on appeal. *Bladow v. Bladow,* 2005 ND 142, ¶ 9, 701 N.W.2d 903. "A will provision is ambiguous if it can be given more than one interpretation or understood in more than one sense." *Zimbleman,* 539 N.W.2d at 71.

 [¶ 7] If a will is ambiguous, extrinsic evidence may be used to help clarify the ambiguity. *Matter of Estate of Brown,* 1997 ND 11, ¶ 15, 559 N.W.2d 818. A trial court's resolution of an ambiguity in a will is a finding of fact that will not be set aside unless it is clearly erroneous. *Id.* at ¶ 15; *Schatz v. Schatz,* 419 N.W.2d 903, 907 (N.D.1988). "A competent testator may dispose of his property as he wishes without regard to the desires of prospective beneficiaries or the views of juries or courts so long as the terms of the will are not prohibited by law or opposed to public policy." *Stormon v. Weiss,* 65 N.W.2d 475, 505 (N.D.1954). " 'An estate may be granted upon a condition, either express or implied, upon performance or breach of which the estate shall either commence, be enlarged, or be defeated.' " *Blevins v. Pittman,* 189 Ga. 789, 7 S.E.2d 662, 664 (1940). When there is a testamentary gift upon a condition that is accepted by the legatee, "the legatee must perform the condition however burdensome." *Crowley v. Nixon,* 127 Kan. 178, 272 P. 104, 105 (1928).

 [¶ 8] The question in this case is what Alice Frandson meant by the word "farming." Both parties argue for different interpretations of this provision of the will. We agree this provision of the will is ambiguous. Dan Frandson argues the word farming in the will encompasses the definition of farming used by the United States Internal Revenue Service and the Farm Services Agency. But, the trial court's determination that farming, as used in the will, requires Frandson to physically farm the land, is supported by the will and

by evidence. We are not convinced by a definite and firm conviction that a mistake was made by the trial court.

[¶ 9] In finding that Alice Frandson intended Frandson to physically farm the land, the trial court considered extrinsic evidence. The record clearly indicates Frandson was physically farming the land when Alice Frandson created and signed her will, Frandson sold all of his farm equipment except one tractor, and Frandson spends forty to fifty hours per year marketing his own grain, purchasing crop insurance, talking with his tenant, and reading farm magazines. We review these findings under the clearly erroneous standard. The trial court's findings are supported by the evidence. We hold that the trial court's findings are not clearly erroneous.

### III

 [¶ 10] Frandson argues that waiver and estoppel, although they appear nowhere in the pleadings and no motion to amend the pleadings was made, were impliedly tried through the introduction of evidence at trial. For an effective appeal on a proper issue, the issue must have been raised in the trial court so the trial court could rule on it. *Kautzman v. Kautzman,* 2003 ND 140, ¶ 10, 668 N.W.2d 59. Issues not raised in the trial court cannot be raised for the first time on appeal. *Id.* However, when an issue was not pled, N.D.R.Civ.P. 15(b) allows the pleadings to be amended so that they conform with evidence introduced at trial. *Tormaschy v. Tormaschy,* 1997 ND 2, ¶ 17, 559 N.W.2d 813. "Under N.D.R.Civ.P. 15(b), a pleading may be impliedly amended by the introduction of evidence which varies the theory of the case and which is not objected to on the grounds it is not within the issues in the pleadings." *Lochthowe v. C.F. Peterson*

*Estate*, 2005 ND 40, ¶ 8, 692 N.W.2d 120. "Amendment of pleadings by implication may only arise when the evidence introduced is not relevant to any issue pleaded in the case." *Id.* at ¶ 8. This Court has explained:

> Consent to try an issue outside the pleadings cannot be implied from evidence which is relevant to the pleadings but which also bears on an unpleaded issue.
>
> > " 'When the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b). The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention.' "

*Mann v. Zabolotny*, 2000 ND 160, ¶ 12, 615 N.W.2d 526 (citation omitted) (quoting *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 652 (N.D.1989)).

[¶ 11] Waiver and estoppel first appeared in Frandson's post-trial brief. Frandson made no motion to amend the pleadings to expand the theory of his case from one of complying with Alice Frandson's intent as to the definition of farming to include one of waiver and estoppel. Amendment of the pleadings under these circumstances is not simply a technical requirement; its purpose is to provide notice to the opposing party and the trial court that the theory of the case is being changed or expanded. Neither did Frandson present any evidence that would sufficiently notify Karen Ruud or the trial court that Frandson was expanding his theory to include waiver and estoppel, nor does it appear on this record that either Ruud or the trial court had notice of the theory until the post-trial brief was filed.

[¶ 12] At trial, Frandson's counsel questioned Karen Ruud, Steve Ruud, and Dan Frandson about whether Karen Ruud ever gave Frandson notice that he was not complying with the will provision. On appeal, Frandson argues this line of questioning resulted in the trial of the issue of waiver by implied consent. The trial transcript shows questions relating to notice given to Frandson were tucked away in lines of questioning relating to whether Frandson was farming the land in compliance with the will provision. The questions relating to notice were relevant to and consistent with the theory that Frandson was in fact complying with the will provision. Many of these questions were phrased to ask the witnesses whether Karen Ruud expressed to Frandson that she thought he was not complying with the terms of the will. While the questions may arguably relate to whether Frandson was given notice, they most certainly relate to whether Frandson was farming the land as required by the will provision. These questions, including their placement, structure, and tone, were not enough to put Karen Ruud on notice of an expansion in Frandson's theory of the case. In fact, Karen Ruud's counsel asked similar questions of witnesses when trying to introduce evidence as to whether Frandson was farming the land in compliance with the will provision. The evidence did not clearly notify Karen Ruud or the trial court that Frandson was expanding his theory to include one of waiver. The evidence was relevant to the theory of whether Frandson was complying with the terms

of the will provision. Therefore, we cannot conclude Karen Ruud impliedly consented to trial of the theory of waiver.

[¶ 13] Frandson's counsel also questioned Karen Ruud, Steve Ruud, and Dan Frandson about the Ruuds' involvement in the lease negotiations between Frandson and Jeffrey Ruud. On appeal, Frandson claims this line of questioning resulted in the trial of estoppel by implied consent. The trial transcript shows that these questions are related to whether Frandson was ever told he was not complying with the will provision. While these questions may arguably relate to a theory of estoppel, they also relate to the pled issue of whether Frandson was farming the land in compliance with the will provision. At trial, questions about involvement in lease negotiations were immediately followed by questions asking whether Frandson was ever told he was not complying with the terms of the will provision. This evidence is relevant to proof of whether Frandson was farming the land in compliance with the will provision. These questions would prove that if Frandson was not farming the land in compliance with the will provision, Karen Ruud would have told him that. It appears Frandson was trying to show that because Karen Ruud never mentioned that a lease was not in compliance with the will provision, she must have thought leasing on a crop-share basis was allowed under the will provision. This evidence, in the form of these questions, did not clearly notify Karen Ruud or the trial court that Frandson was expanding his theory to include one of estoppel. The evidence was relevant to the theory of whether Frandson was complying with the will provision. Therefore, we conclude Karen Ruud did not impliedly consent to trial of estoppel. Because of the lack of evidence at trial to sufficiently notify Karen Ruud or the trial court of the waiver and estoppel theory and the lack of a motion to amend the pleadings, there was no amendment of the pleadings by consent.

## IV

[¶ 14] The judgment requiring Dan Frandson to sell Karen Ruud the cropland pursuant to Ruud's option to purchase under the terms of Alice Frandson's last will and testament is affirmed.

[¶ 15] DALE V. SANDSTROM, CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.