2015 ND 152

**In the Matter of the ESTATE OF Anita K. GRENGS, Deceased.**

**Greg Grengs, Personal Representative, Petitioner and Appellant**

v.

**David Lakefield, Successor Personal Representative, Gary Grengs, Karen Marsland, and Julie Rostad, Respondents.**

**Karen Marsland, and Julie Rostad, Appellees.**

No. 20140220.

Supreme Court of North Dakota.

June 11, 2015.

Rebecca S. Thiem, Bismarck, N.D., for petitioner and appellant.

Sophie Morgan (argued) and Ross H. Espeseth (on brief), Bismarck, N.D., for respondent and appellee Karen Marsland.

Brittany M. Johs (argued) and Kerry S. Rosenquist (appeared), Grand Forks, N.D., for respondent and appellee Julie Rostad.

KAPSNER, Justice.

[¶ 1]   Greg Grengs appeals from district court orders interpreting Anita Grengs' will and approving the final accounting and distribution of Anita Grengs' estate. We hold the option to purchase provision of the will is ambiguous and evidence indicates Anita Grengs intended Greg Grengs have an option to purchase property that was not conditioned on the landowner's willingness to sell, and the evidence supports the district court's interpretation of the option to lease provision of the will. We affirm in part and reverse in part.

I

[¶ 2]   Anita Grengs had five children, Julie Rostad, Jay Grengs, Karen Marsland, Gary Grengs, and Greg Grengs. Anita Grengs owned farmland in Renville County, and Greg Grengs farmed the land on a crop share basis.

[¶ 3]   On March 27, 2001, Anita Grengs executed a Last Will and Testament, devising specific portions of the farmland to each of her children. The will required that each of the deeds conveying property to Rostad, Jay Grengs, and Marsland include options to purchase in favor of Greg and Gary Grengs. The will also included a provision giving Greg and Gary Grengs the option to lease the property deeded to Rostad, Jay Grengs, and Marsland. Anita Grengs died in September 2009. Jay Grengs passed away in 2002, before Anita Grengs' death.

[¶ 4]   In October 2009, an application for informal probate of the will was filed. Greg Grengs was initially appointed as personal representative of Anita Grengs' estate, but he later resigned and a successor personal representative was appointed.

[¶ 5]   On January 11, 2012, the personal representative moved for an order directing him to sell to Greg Grengs the property Jay Grengs was to receive under the will. Rostad and Marsland objected to the sale of the land. Greg Grengs filed a brief in support of the personal representative's motion, arguing the will included an option allowing him to purchase the property. He also filed a notice of exercise of options, stating he was exercising the option to purchase the property left to Rostad, Marsland, and Jay Grengs and he was also exercising the option allowing him to lease the property.

[¶ 6]   An evidentiary hearing on the personal representative's motion was held on February 27, 2012. On April 16, 2012, the district court entered an order approving the sale of the property that was left to Jay Grengs in the will. The court found the bequest to Jay Grengs lapsed because he died before Anita Grengs and it was in the estate's best interest that the property

be sold to Greg Grengs. The court ordered the personal representative to sell the surface interest in the property to Greg Grengs. The court reserved the issue of whether Greg Grengs was entitled to purchase the mineral interests under his option to purchase.

[¶ 7] On March 21, 2012, Greg Grengs petitioned for declaratory judgment, requesting the court determine his option rights under the will. He argued Anita Grengs conveyed certain property to each child under the will, but the conveyance was subject to an option in his favor allowing him to purchase the property and the option to purchase did not require the landowner to be willing to sell the property. He claimed the option to purchase was ambiguous and should be interpreted consistent with Anita Grengs' intent that he have an irrevocable option. He alternatively requested the court reform the will consistent with Anita Grengs' intent. He later amended his petition to request the court determine whether the option to purchase applies to the mineral interests. Marsland and Rostad filed briefs opposing Greg Grengs' petition.

[¶ 8] In an order dated April 16, 2012, the court denied the relief Greg Grengs requested in his petition for declaratory judgment. The court found the option to purchase is not ambiguous, the option is conditioned on the landowner's desire to sell the property, reformation of the will was not appropriate because the court was not convinced there was a mistake of fact or law, and the option to purchase did not include the option to purchase mineral interests.

[¶ 9] Greg Grengs moved to vacate the order denying his petition for declaratory judgment, arguing the court entered the order sua sponte without giving the parties notice and without allowing him to present argument and testimony. The court granted Greg Grengs' motion and vacated the order.

[¶ 10] On February 26, 2013, Greg Grengs filed a second amended petition for declaratory judgment to construct and reform the will. He requested the court interpret the ambiguous option to purchase provision consistent with Anita Grengs' intent, reform the option to purchase provision to correct mistaken language suggesting the option to purchase was conditioned on a willing seller, declare the option to purchase includes the option to purchase mineral interests, and declare he has an unconditional option to lease the property conveyed to Marsland and Rostad.

[¶ 11] A hearing on the second amended petition for declaratory judgment was held on March 21, 2013. Marsland filed a post-hearing brief, arguing the will is unambiguous and requires the landowner be willing to sell the property before Greg Grengs can exercise his option to purchase. Greg Grengs filed a brief arguing the option to purchase is ambiguous and Anita Grengs' intent was to grant him an option to purchase that was not conditioned on the owner's willingness to sell. Greg Grengs also filed a brief about the crop lease and the interpretation of the option to lease provision of the will.

[¶ 12] On April 19, 2013, the court entered an order deciding the issues raised in Greg Grengs' second amended petition for declaratory judgment. The court interpreted the will and concluded the option to purchase is not ambiguous, Greg Grengs has the right to purchase the property at fair market value when the landowner decides to sell, there is no requirement that the mineral interests be sold with the surface interest, and Greg Grengs' option to lease is unconditional and not dependent upon the landowner's desire to lease the property. The court

also denied Greg Grengs' request to re-form the will.

[¶ 13] On April 29, 2013, the personal representative petitioned for supervised administration of the estate. The petition was granted on May 22, 2013.

[¶ 14] On April 15, 2014, Greg Grengs moved for the court to interpret his option to lease, requesting the court determine whether he is required to pay the landlord one-third of the sold crop after deducting production and sales costs, whether each party is responsible for purchasing its own crop insurance, and whether he has the sole authority to make production and marketing decisions. After a hearing, the court entered an order on May 2, 2014, interpreting the option to lease and found the tenant is responsible for all production costs, the tenant is responsible for all decisions about the crops to be raised, and the landlord may purchase insurance for her one-third share of the crops.

[¶ 15] On April 4, 2014, the personal representative petitioned for approval of the final accounting, final distribution, and complete settlement of the estate. On June 2, 2014, the court entered an order approving the final accounts and distribution, and discharging the personal representative. Greg Grengs filed a notice of appeal on June 18, 2014.

## II

[¶ 16] Marsland argues this Court does not have jurisdiction. She contends the appeal is untimely because the probate was unsupervised and the appealed orders were decided more than 60 days before the notice of appeal was filed.

[¶ 17] In civil cases, the notice of appeal must be filed within 60 days from service of notice of entry of the judgment or order being appealed. N.D.R.App.P. 4(a). "Only judgments and decrees consti-tuting a final judgment and specific orders enumerated by statute are appealable." *Investors Title Ins. Co. v. Herzig,* 2010 ND 138, ¶ 23, 785 N.W.2d 863.

[¶ 18] In an unsupervised pro-bate, "each proceeding before the court is independent of any other proceeding involving the same estate." N.D.C.C. § 30.1–12–07; *see also In re Estate of Stensland,* 1998 ND 37, ¶ 14, 574 N.W.2d 203. "Because each proceeding in an un-supervised probate is considered indepen-dent of other proceedings involving the same estate, there need be finality, for purposes of appealability, only as to the proceeding being appealed, not as to the entire estate." *In re Estate of Hass,* 2002 ND 82, ¶ 7, 643 N.W.2d 713. When in-terrelated claims have not all been re-solved, the order or judgment is not final for review. *Stensland,* at ¶ 14. " 'Thus, in an unsupervised probate, an order settling all claims of one claimant is final, even if there are pending claims by other claim-ants.' " *In re Estate of Eggl,* 2010 ND 104, ¶ 7, 783 N.W.2d 36 (quoting *Schmidt v. Schmidt,* 540 N.W.2d 605, 607 (N.D.1995)).

[¶ 19] However, supervised ad-ministration "is a single in rem proceeding to secure complete administration and set-tlement of a decedent's estate under the continuing authority of the court which extends until entry of an order approving distribution of the estate and discharging the personal representative, or other order terminating the proceeding." N.D.C.C. § 30.1–16–01. "In a supervised administra-tion, an order entered before approval of distribution of the estate and discharge of the personal representative is not final and cannot be appealed without [certification under N.D.R.Civ.P. 54(b) ]." *In re Estate of Starcher,* 447 N.W.2d 293, 296 (N.D. 1989).

[¶ 20] Marsland contends the proceeding was an unsupervised probate, all of Greg Grengs' issues related to the option to purchase were fully litigated prior to the probate becoming supervised, and the issues related to the farm leases were the only issues determined after the probate became supervised. She contends this Court does not have jurisdiction to address the issues related to the district court's decision on the option to purchase because Greg Grengs' notice of appeal for that decision was not timely.

[¶ 21] The petition for supervised administration was filed in April 2013, and granted in May 2013. This was a supervised probate and the orders were not final and appealable until after entry of an order approving distribution of the estate and discharge of the personal representative. The final order approving distribution was entered on June 2, 2014, and the notice of appeal was filed on June 18, 2014. The notice of appeal was timely under N.D.R.App.P. 4(a). We conclude Greg Grengs' appeal is timely and we have jurisdiction to address all of the issues he raised in his brief.

### III

[¶ 22] Greg Grengs argues the district court erred in interpreting the will and finding his option to purchase was conditioned on the landowner's willingness to sell. He claims the option to purchase language is ambiguous and there was undisputed evidence that Anita Grengs' intent was to grant him an option to purchase the property left to Rostad and Marsland even if they did not want to sell. He contends the court also erred in deciding the mineral rights were not included in the option to purchase.

[¶ 23] We have explained:

A court's primary objective in construing a will is to ascertain the testator's intent, if that intent is not contrary to law. The testator's intent, as expressed in his will, controls the legal effect of his dispositions. If the language of a will is clear and unambiguous, the testator's intent must be determined from the language of the will itself. Whether a will is ambiguous is a question of law for the court to decide. A will is ambiguous if, after giving effect to each word and phrase, its language is susceptible to more than one reasonable interpretation. If a will is ambiguous, extrinsic evidence can be used to clarify the ambiguity. *Eggl*, 2010 ND 104, ¶ 10, 783 N.W.2d 36 (quoting *In re Estate of Flynn*, 2000 ND 24, ¶ 7, 606 N.W.2d 104) (citations omitted). Questions of law are reviewed under the de novo standard of review on appeal. *Eggl*, at ¶ 10. Whether an ambiguity exists in a will is a question of law, but a court's resolution of the ambiguity is a finding of fact that will not be reversed on appeal unless it is clearly erroneous. *Ruud v. Frandson*, 2005 ND 174, ¶¶ 6–7, 704 N.W.2d 852. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or when this Court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *In re Matthew Larson Trust Agreement*, 2013 ND 85, ¶ 9, 831 N.W.2d 388.

### A

[¶ 24] Article III, paragraph F of Anita Grengs' will contains the option to purchase provision and requires the deeds conveying property to Rostad, Jay Grengs, and Marsland to contain an option to purchase in favor of Greg Grengs, stating:

The deeds conveying the property set forth in paragraphs C, D, and E above shall contain a first option to purchase in favor of Greg Grengs and a second op-

tion to purchase in favor of Gary Grengs for so long as either, with respect to his option, is actively engaged in farming. Both first and second option to purchase shall expire at such time as the person holding the option is not actively engaged in farming as indicated by affidavit signed by him or his authorized agent, or December 31, 2030, whichever occurs first, and said right exercisable in the event any person holding title to said property should desire to sell the same as indicated in writing by him or her or an authorized agent, and said right exercisable at fair market value as determined by an appraisal.... The appraiser shall be agreed upon between my son purchasing the property, and the owner thereof. If both Greg Grengs and Gary Grengs decline, upon presentation, to exercise their options, then both options shall expire.

[¶ 25] Greg Grengs argues this provision is ambiguous. He claims the second sentence of the paragraph contains three conditions that cause the option to expire: (1) if the person holding the option is not actively engaged in farming, (2) December 31, 2030, or (3) if the owner indicates he or she would like to sell the property and the person holding the option declines to exercise his option. The district court found the language was unambiguous, and explained:

> To this court the provisions of paragraph F are quite clear and can be paraphrased as follows:

> Until December 31, 2030, if Julie or Karen desires to sell the subject farmland and Greg has been actively farming, then Greg shall have the right to purchase the property. If Greg has not been actively farming or does not wish to purchase the property, then this right would pass to Gary.

The court further found that the use of the word "option" in the paragraph did not make the will ambiguous. The court found there was no ambiguity in the paragraph.

[¶ 26] The disputed language in paragraph F provides that the deeds conveying property to Rostad, Jay Grengs, and Marsland shall contain an option to purchase in favor of Greg Grengs and that the option to purchase will expire when the person holding the option "is not actively engaged in farming ..., or December 31, 2030, whichever occurs first, and said right exercisable in the event any person holding title to said property should desire to sell the same...." Paragraphs C, D, and E of Article III of the will state specific property is given to Rostad, Jay Grengs, and Marsland "subject to a first option to purchase." The first sentence of paragraph F states the deeds conveying the property shall contain an option to purchase; however, the second sentence of the paragraph may be interpreted to condition the option to purchase on the landowner's desire to sell, which treats the option more like a right of first refusal.

[¶ 27] An option to purchase and a right of first refusal are different. An option to purchase creates in the option holder the power to compel the owner of the property to sell it at a stipulated price whether or not the owner is willing to sell. *Berry–Iverson Co. of N.D., Inc. v. Johnson,* 242 N.W.2d 126, 130 (N.D.1976); *see also* 77 Am. Jur. 2d *Vendor and Purchaser* § 27 (2015). A right of first refusal is often referred to as a preemptive right because "it allows the holder to preempt a sale to an interested third party, and requires the landowner to offer the property to the right holder on the same terms." *Northern Plains Alliance, L.L.C. v. Mitzel,* 2003 ND 91, ¶ 14, 663 N.W.2d 169. We have further explained:

The holder of a right of first refusal on a piece of land only has the right to receive an offer to buy the land. Generally, it is a contractual right to preempt another because the right is conditional on the owner's decision that an offer from a third party is acceptable. More specifically, the right is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it. Only then can the holder of the right decide whether or not to create a contract on the same terms that the owner is willing to accept from the third party. More precisely, the occurrence of these events (owner's receipt of an offer and the good-faith decision to accept it) satisfies the condition precedent, which "triggers" the right of first refusal that "ripens" into an option. The option then can be exercised like any other option contract.

*Id.* (quoting 3 Eric Mills Holmes, *Corbin on Contracts* § 11.3 (rev. ed.1996)); *see also Berry–Iverson,* at 130 (explaining the difference between a pre-emption and an option).

█ [¶ 28] " 'A will provision is ambiguous if it can be given more than one interpretation or understood in more than one sense.' " *Ruud v. Frandson,* 2005 ND 174, ¶ 6, 704 N.W.2d 852 (quoting *In re Estate of Zimbleman,* 539 N.W.2d 67, 71 (N.D.1995)). In this case, the provision contains language indicating an option to purchase and a right of first refusal, and is susceptible to more than one reasonable interpretation. *Cf. Olson v. Peterson,* 288 N.W.2d 294, 297 (N.D.1980) (clause of lease stating party shall have an absolute option to purchase property when the second party shall decide to sell was ambiguous). We conclude this provision of the will is ambiguous.

█ [¶ 29] Extrinsic evidence may be used to determine a testator's intent when a will is ambiguous. *Ruud,* 2005 ND 174, ¶ 7, 704 N.W.2d 852. In this case, extrinsic evidence was offered to ascertain Anita Grengs' intent.

[¶ 30] Greg Grengs testified he accompanied Anita Grengs when she met with the attorney who drafted her will, Shane Goettle, and he was present when the will was signed. He testified Anita Grengs' top priority for her will was to keep the farm together as a viable economic unit and that he have the option to purchase the property as long as he was farming. He testified Goettle explained each of the provisions of the will before Anita Grengs signed the final version, including that he would have the option to purchase the farmland as long as he was actively engaged in farming, he would have until 2030 to exercise the option, and he would have to exercise his option or it would expire if Rostad or Marsland wanted to sell their property.

[¶ 31] Transcripts of Goettle's deposition and his testimony from a prior hearing were also offered and admitted. Goettle testified he met with Anita Grengs at least five times to draft a will and power of attorney between January 2000 and March 27, 2001, when the final version of the will was signed. He testified Anita Grengs initially was not sure what would be the best way to pass on the farm, she wanted to keep the farm together and for the farm to continue to be farmed by her sons, she wanted the farm to continue to be able to provide a viable income and a means of earning a living, she wanted to pass her assets onto her children in a fair way, and she wanted Greg Grengs to have the farm and the other children to get the rest of the assets. He testified that they discussed different ways to accomplish her goals, including giving the farm to the

farming children and life insurance proceeds to the other children, placing the property in a trust with an option to purchase or a right of first refusal, and giving the property outright to the children with an option to purchase in favor of Greg and Gary Grengs.

[¶ 32] Goettle testified that Anita Grengs knew the difference between a right of first refusal and an option to purchase and he explained them to her to ensure she understood the differences, they discussed creating a trust and giving Greg Grengs a right of first refusal, but she rejected that proposal and was adamant that she wanted Greg Grengs to have an option to purchase when they met for the final time on March 27, 2001. He testified Anita Grengs knew her daughters preferred a right of first refusal and Greg Grengs wanted a right to purchase the property without the consent of the other children, but he advised her that there was no way to make all of the children happy and she had to decide what she wanted to do. Goettle testified that he reviewed all of the options they had previously considered at the final meeting before Anita Grengs signed the will, and she decided she wanted to deed out the property to all of the children, include an option to purchase for the farming sons, and she did not want the option to purchase to be conditioned on the landowner's desire to sell. Goettle testified he had Greg Grengs leave the room during the March 27 meeting so he could ascertain Anita Grengs' true intent, she was concerned about how her family would react to her decision to give Greg Grengs an option to purchase the property, but she was clear about her decision, she was clear that she did not want a right of first refusal, and she did not want the option conditioned on the landowner's desire to sell.

[¶ 33] Goettle testified that he drafted the option to purchase provision so there would be three ways the option would expire: (1) if Greg Grengs and Gary Grengs were no longer farming; (2) on December 31, 2030; and (3) if the landowner wanted to sell. He testified that the language stating the right was exercisable if the landowner desired to sell was not intended to limit when the option could be exercised; rather, it was intended to refer to another way the option would expire. He testified that he was drafting the will during the final meeting by making changes to a prior version that included a trust and a right of first refusal, he attempted to "get rid of the trust language and reformulate the Will so that it reflected [Anita Grengs'] rejection of the right of first refusal and instead went with her option to purchase in favor of the farming son," and any remaining language indicating a right of first refusal was in error. Goettle testified that he remembered meeting with Anita Grengs, she was a memorable client because she changed her mind so much, and he could clearly recall how she wanted her will drafted.

[¶ 34] Although the district court found the will was unambiguous, it also stated its decision would not change if it considered the extrinsic evidence. The court found Greg Grengs' testimony was self-serving and was not necessarily helpful to him, and Goettle's "theory that the right of first refusal language is simply one of three triggers to terminate the option is a strained rationalization that is just not reasonable." The court found "even if one is to consider the extrinsic evidence proffered by Greg there is still no alternative reasoned interpretation of Paragraph F."

[¶ 35] A court's resolution of an ambiguity in a will is a finding of fact that will not be reversed on appeal unless it is clearly erroneous. *Ruud,* 2005 ND

174, ¶ 7, 704 N.W.2d 852. The district court found the extrinsic evidence was not persuasive because Goettle's testimony that the option would terminate if a landowner desired to sell the property and Greg Grengs refused to purchase was not reasonable and there was no alternative reasoned interpretation of the option provision. This Court does not make independent findings of fact or substitute our judgment for that of the district court. *See Hoggarth v. Kropp,* 2010 ND 197, ¶ 12, 790 N.W.2d 22. However, the record contains clear evidence Anita Grengs intended Greg Grengs have an option to purchase that was not conditioned on the landowner's willingness to sell. Goettle testified he was confident in his ability to recall his discussions with Anita Grengs and she was clear that she did not want the option to purchase to be conditioned on the landowner's willingness to sell. His testimony also clearly indicated that any language included in the option provision which could be interpreted as a right of first refusal was a mistake. The district court did not find Goettle's testimony lacked credibility; rather, it disregarded the undisputed evidence about Anita Grengs' intent and found the extrinsic evidence did not offer an alternative reasoned interpretation.

[¶ 36] The option to purchase provision is ambiguous, and there was undisputed extrinsic evidence of Anita Grengs' intent. Based upon the entire record, we are left with a definite and firm conviction a mistake has been made and the district court's decision is clearly erroneous. We conclude Anita Grengs intended Greg Grengs would have an option to purchase the property that was not conditioned on the landowner's desire to sell.

### B

[¶ 37] The district court determined the option to purchase does not require the landowner to sell the mineral interests to Greg Grengs. The court explained Greg Grengs has an option to purchase the property if the owner decides to sell, a landowner has a legal right to convey the land and reserve the underlying mineral interests, and therefore Rostad and Marsland may choose to sell the land and retain the mineral interests. Because we have determined the option to purchase is not conditioned on the owner's willingness to sell and the plain language of the will does not specify that the landowner may reserve any mineral interests, we also conclude Greg Grengs may purchase the mineral interests when he exercises his option to purchase the land.

[¶ 38] Greg Grengs has given written notice he was exercising his option to purchase the property deeded to Rostad and Marsland. The property will have to be appraised, including the mineral interests.

### IV

[¶ 39] Greg Grengs argues the district court erred in interpreting the option to lease provision of the will. He contends the language in the will is unambiguous and requires him to pay the landlord a one-third share after deducting the production expenses, the court found the provision was unambiguous, and the court misapplied the law by considering expert testimony to interpret the option.

[¶ 40] Article IV of the will requires the deeds conveying the property to Rostad, Jay Grengs, and Marsland to include an option allowing Greg Grengs to lease the farmland:

*OPTION TO LEASE:* It is my desire that any child of mine who has a first or second option to purchase any farmland pursuant to Article III shall likewise have a first and second option to lease the farmland until the first and/or sec-

ond option to purchase has expired, respectively, and that the deeds conveying the property shall set forth the same. The option to lease the farmland shall be on a share crop lease, with a net one-third of the grains and crops raised on the land to be paid to owner thereof.

[¶ 41] The district court found all of the parties argued the language was unambiguous but none of the parties agreed on what the language means. The court considered and relied on extrinsic evidence from Greg Grengs and an expert witness, John Steinberger, to interpret the provision. The court found Steinberger's testimony was persuasive in interpreting the provision. The court found "a net one-third of the grains and crops" means the landowner will receive one-third of the crops and the tenant is responsible for providing labor, equipment, and all input costs, including seed, fertilizer, chemicals, and delivery of the crops. The court also determined the landowner would be required to pay the taxes on the land and could choose to insure the landowner's one-third portion of the crops.

[¶ 42] Although the district court did not explicitly find the option to lease provision was ambiguous, it found the parties did not agree on the interpretation of the provision and it considered extrinsic evidence to interpret the provision. The court implicitly found the provision was ambiguous. *See Eggl*, 2010 ND 104, ¶ 10, 783 N.W.2d 36 (the testator's intent is determined from the language of the will itself when it is unambiguous and extrinsic evidence may be used to clarify the intent only if the will is ambiguous).

[¶ 43] The option to lease provision states, "a net one-third of the grains and crops raised on the land to be paid to owner thereof." Greg Grengs claims a "net one-third share of the grains and crops" means the landlord is entitled to a one-third share after deducting the production expenses. Rostad and Marsland contend the language means one-third of the grains and crops are paid to the landowner and the tenant must pay all expenses. Marsland argues the ordinary and commonly understood definition of "net" does not apply to the provision of the lease because special meaning is given to the term by custom and usage. The parties have made rational arguments for different interpretations of the provision. Because the provision can be given more than one interpretation, we conclude the district court did not err in finding the provision is ambiguous.

[¶ 44] The district court considered the evidence presented at the hearing and concluded the will requires the landowner receive one-third of. the crops before expenses are deducted. There is evidence supporting the court's decision. Greg Grengs testified that he paid all expenses under his prior crop-share rental agreements with Anita Grengs, and Rostad testified that she discussed the lease provision with Anita Grengs and she said nothing would change and the lease would be under the same terms as she had been leasing the farmland to Greg Grengs. Steinberger testified that he had seen similar language in other leases and, based on his prior experience and custom and usage, a lease using this language would require the tenant pay all of the expenses. He testified the language means the tenant pays the landowner the net of the grains and crops raised on the land, and not the net from the grains and crops sold less the expenses. He also testified the landowner would pay for her own crop insurance policy separate from the tenant's insurance.

[¶ 45] Although we may not agree with the district court's interpretation, there is evidence in the record supporting it. Un-

der the facts and circumstances of this case, we conclude the court's decision is not clearly erroneous.

### V

[¶ 46]  We conclude the option to purchase provision of Anita Grengs' will is ambiguous and Anita Grengs intended Greg Grengs have an option to purchase that is not contingent on the landowner's willingness to sell.  We also conclude there is evidence supporting the district court's interpretation of the option to lease provision.  Because we reverse the district court's interpretation of the option to purchase provision of the will, it is unnecessary to address Greg Grengs' alternative argument that the district court erred in denying his request to reform the will. We affirm in part and reverse in part.

[¶ 47]  GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.