# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2024 ND 102

In the Matter of the Estate of Merle M. Almer a/k/a Merle Marvin Almer, Deceased

| | |
|---|---|
| Linda R. Moe, Personal Representative, | Petitioner and Appellee |
| v. | |
| Merle C. Almer, | Respondent and Appellant |
| and | |
| Alexander Almer, Cindy Almer, | |
| Marvin D. Almer, Angel Pederson, | |
| Personal Representative of Steven W. Almer, | |
| Wesley Dean Almer, Ramona F. Barmoen, | |
| Martin Candia, First Lutheran Church of Tioga, | |
| Angela Holte, Jennifer Knudson, | |
| Jonathan McGregor, Jeffery Allen Moe, Sr., | |
| Jeffrey Allen Moe, Jr., Joe Ramos, | |
| Curtis Vande Sandt, Landon Stern, | |
| Diana Rae Thompson and Gary Zenker, | Respondents |

### No. 20230365

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Kirsten M. Sjue, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Aaron J. Weber (argued), Watford City, ND, and Jenna McPherson (appeared), Casselton, ND, for petitioner and appellee.

Bruce A. Schoenwald, Moorhead, MN, for respondent and appellant.

**Estate of Almer**
**No. 20230365**

**Crothers, Justice.**

[¶1] Casey Almer appeals from a judgment entered in a probate case. He argues the district court misinterpreted a will and erred when it found the personal representative did not breach her fiduciary duties. Almer also argues the court erred when it approved attorney's fees. We affirm the judgment.

I

[¶2] Merle Almer died in 2016 at the age of 89. Among other endeavors during his life, he owned and operated a construction business and a farm totaling roughly 2,800 acres. He owned all of his assets individually and operated a sole proprietorship throughout his life. His wife predeceased him. Linda Moe is one of his children. Casey Almer is one of his grandchildren. Moe is Casey Almer's aunt.

[¶3] Merle Almer's will named Moe his personal representative. The will contains bequests to various individuals. Some are cash, but the will nonetheless refers to them as "specific devises." Other bequests are particular property but are not referred to as specific devises. The bulk of Merle Almer's wealth is distributed in three categories: the construction business, the farm and farming assets, and oil and gas interests. The construction business is devised 52% to Moe with the rest to others who were involved in the business. The will devises a life estate in the farm and farming assets to Casey Almer. The will sets out a testamentary trust for the oil and gas interests. Moe is named the trustee. She, Casey Almer, and others are beneficiaries.

[¶4] The will directs the personal representative to use "harvested and unharvested grain" to pay costs of administration and taxes for the estate. The will contains contingent instructions in the event the grain is insufficient to cover the estate's liabilities. At the time of Merle Almer's death in February 2016, he had no crop in the ground. The grain discovered in his grain bins was less than expected, and the proceeds from selling it were anticipated to be short of the predicted estate tax liability. These circumstances resulted in a dispute between the personal representative and Casey Almer that ultimately lead to a separate lawsuit. The personal representative sued Almer for conversion of grain and other farm assets, and Almer brought conversion and breach of fiduciary duty counterclaims. Almer's counterclaims were dismissed, and a jury found he did not convert property.

[¶5]   During the course of administration, the personal representative paid the estate tax, which was roughly $2 million more than the proceeds of grain harvested before the decedent's death. After the personal representative paid the estate tax and distributed the farm assets, Almer filed a petition for surcharge alleging the personal representative breached her fiduciary duties. The personal representative filed a response and a cross motion requesting an order approving an inventory and appraisement, final report and accounting, and approval of final distribution. The district court heard testimony and took evidence over five days.

[¶6]   The district court issued a lengthy order with findings of fact and conclusions of law. The court held abatement provisions in the will were ambiguous due to the will's non-standard use of the term "specific devise." The court made findings concerning the testator's intent based on testimony from the attorney who prepared the will. The court found the testator intended for an abatement procedure that prioritized construction business assets over most other assets. The court also found the personal representative did not breach her fiduciary duties while administering the estate. The court denied Almer's application for surcharge, and granted the personal representative's motion to approve final distribution. The court denied about $35,000 in attorney's fees and approved approximately $760,000 in attorney's fees. The court entered judgment staying its orders pending appeal.

[¶7]   Almer appealed, and we temporarily remanded the case for the limited purpose of considering costs and disbursements. The district court entered an order denying costs and disbursements and the parties filed amended briefs. On appeal, Almer challenges the court's interpretation of the will, the court's findings concerning the personal representative's conduct during administration, and the court's approval of attorney's fees.

II

[¶8]   Almer argues the district court misinterpreted abatement provisions in the will. He asserts the court erroneously read the term "specific devise" to create an abatement procedure that disfavored his bequests. He claims the will's abatement procedure is not ambiguous like the court determined, and even if it was, the court's consideration of extrinsic evidence was inappropriate because statutory defaults should apply in the case of ambiguity.

A

[¶9] When interpreting a will the primary objective is to determine the testator's intent. *Estate of Grengs,* 2015 ND 152, ¶ 23, 864 N.W.2d 424. Interpretation of an unambiguous will presents a question of law that is fully reviewable on appeal. *Estate of Eagon,* 2017 ND 243, ¶ 5, 902 N.W.2d 751. Whether ambiguity exists is a question of law. *Ruud v. Frandson,* 2005 ND 174, ¶ 6, 704 N.W.2d 852. A will is ambiguous if its language is susceptible to more than one reasonable interpretation. *Estate of Eggl,* 2010 ND 104, ¶ 10, 783 N.W.2d 36. Extrinsic evidence may be considered to resolve an ambiguity. *Estate of Brown,* 1997 ND 11, ¶ 15, 559 N.W.2d 818. The district court's resolution of an ambiguity is a question of fact reviewed under the clearly erroneous standard. *Id.* at ¶ 7. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or when, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made." *In re Matthew Larson Trust Agreement,* 2013 ND 85, ¶ 9, 831 N.W.2d 388 (internal quotation marks omitted) (quoting *Am. Bank Ctr. v. Wiest,* 2010 ND 251, ¶ 13, 793 N.W.2d 172).

B

[¶10] Almer argues the district court erred when it found the will's abatement provisions are ambiguous. Abatement, in the context of a will, means the "reduction of a legacy, general or specific, as a result of the estate's being insufficient to pay all debts and legacies." *Abatement,* Black's Law Dictionary (11th ed. 2019). The Uniform Probate Code, as adopted in North Dakota, provides default abatement provisions. *See* N.D.C.C. § 30.1-20-02. Under these rules, property not disposed of by a will is the first to abate, followed by residuary devises, then general devises, and then specific devises. N.D.C.C. § 30.1-20-02(1). A general devise is "a specific amount of money or quantity of property, that is payable from the estate's general assets." *Devise,* Black's Law Dictionary (11th ed. 2019). A specific devise is a "devise that passes a particular piece of property." *Id.* The statutory abatement provisions do not apply if a will provides its own abatement procedure. N.D.C.C. § 30.1-20-02(2). If a will sets out its own procedure, "the shares of the distributees abate as may be found necessary to give effect to the intention of the testator." *Id.*

[¶11] Merle Almer provided an abatement procedure that differs from the statutory default. His will requires taxes, debts, and expenses to be paid "out of the residue of my

3

estate, without apportionment." In the next sentence, the will states: "Upon my death, all of the harvested and unharvested grain which I may own at the time of my death . . . shall be sold in the ordinary course of business, and the proceeds therefrom shall be used to pay such taxes and expenses of administration . . ." The will then provides contingent instructions if "the proceeds from the grain are insufficient." In such case, "my liquid assets shall be used to pay them." The will references certain bank accounts as "liquid assets" and gives the personal representative "absolute discretion" to use funds from those accounts "and/or from any other liquid assets in my Estate." The next instruction is at the center of the dispute and provides: "If the liquid assets are insufficient to pay the taxes, debts, expenses of administration and *specific devises*, then my Personal Representative shall have the absolute discretion to sell any assets of my estate as may be necessary to pay them." (Emphasis added.)

[¶12]  The parties advance differing abatement procedures based on their interpretation of the testator's use of the term "specific devises" in the preceding sentence. The personal representative asserts the testator intended the term "specific devise" to have a special meaning connoting bequests that are to be prioritized in the administration. The personal representative argues the testator "deviated from the traditional definition of the phrase," noting the will describes some general bequests of cash as specific devises. The personal representative argues bequests labeled as "a specific devise" are to abate last. Almer asserts the personal representative's interpretation is unworkable. He argues it contradicts language in the abatement clause that refers to certain bank accounts as "liquid assets." He notes one account related to the construction business is bequeathed as a "specific devise" in the will. He argues the testator, by labeling the account both a "specific devise" and referencing it as a liquid asset available to pay expenses, could not have intended to provide special abatement protection for the account. He argues the testator's use of the term "specific devise" did not create a hierarchy favoring the construction assets like the personal representative suggests.

[¶13]  Both parties have advanced reasonable interpretations of the abatement provisions. The personal representative's focus on the term "specific devise" is reasonable because the testator's repeated use of the term suggests it was intended to have significance. The will clearly uses the term "specific devise" in a manner contrary to its ordinary definition by labeling a number of cash bequests as specific devises. The will also instructs the personal representative to use "liquid assets . . . to pay . . . specific devises." Inclusion of the term "specific devise" to describe some bequests but not others, and use of the term in the will's

4

abatement provisions, suggests the testator meant it to be operative. However, various bequests labeled "specific devise" are "liquid assets" by their nature, and one is specifically referred to as such. It is unworkable to simultaneously protect "specific devises" from abatement and also make them available in the case abatement occurs. Almer's interpretation, which does not give the term operative effect, is also reasonable because it avoids problems created by the will labeling various liquid assets as specific devises. We conclude the district court did not err when it held the will was ambiguous.

C

[¶14] Almer argues that even if there is ambiguity, extrinsic evidence is inappropriate because the Uniform Probate Code provides a statutory tax apportionment procedure. Almer asserts a will either unambiguously provides a method of tax apportionment or it does not. He argues any ambiguity "triggers the apportionment statute requiring *all* devisees to share in the payment of estate taxes." (Emphasis in original.) We disagree. Under the statutory procedure, taxes are to be apportioned equally among interested persons "[u]nless the will otherwise provides." N.D.C.C. § 30.1-20-16(2). Thus, when determining if the default provision applies, the question is whether the testator expressed an intent that differs from the statute. Merle Almer's will instructs the personal representative to pay estate taxes "without apportionment," and it provides a specific payment procedure that differs from the statute. No language in section 30.1-20-16 suggests the default applies when an alternative method is expressed but is ambiguous. Therefore extrinsic evidence is appropriate to resolve ambiguities in the will concerning payment of taxes. *See Estate of Johnson*, 501 N.W.2d 342, 345 (N.D. 1993) (consideration of extrinsic evidence was appropriate when testator "made clear her intentions about treating all four children equally," but ambiguous language created "confusion about how [she] intended to accomplish that objective"). The district court did not err when it considered extrinsic evidence to resolve the ambiguity.

D

[¶15] Almer argues the district court's interpretation of the will conflicts with the evidence presented at trial. Based on extrinsic evidence, the district court found the "will expresses an order of abatement, and that those devises denominated in [the] will as 'specific devises' are the preferred devises with the highest priority that would be the very last to abate." The court's finding is based on testimony from Kathleen Imes, the attorney who prepared the will. The court found "Imes worked with Merle Almer on his estate planning for many

5

years, had discussions with him about his intent for the disposition of his estate assets, and drafted this particular will based on those discussions." The court considered credible Imes' testimony "that the term 'specific devise' in the will was used intentionally by Merle Almer to signify the preferred devises with the very highest priority, and was one of the most important parts of his will." The court found Merle Almer considered his construction business, which he labeled a "specific devise," to be "his legacy" and that he "wanted it to survive after his death." The court found Merle Almer intended that bequests labeled "specific devise" could be "funded" by the sale of other assets, including "the Almer farm assets, and the Almer Minerals Trust." The court's findings regarding the testator's intent are supported by the evidence and not clearly erroneous. The district court did not err when it interpreted the will.

## III

[¶16]   Almer argues the personal representative breached her fiduciary duties by failing to distribute estate income and property, falsely accusing him of stealing grain from the estate, engaging in unfounded litigation against him, and failing to properly maintain estate equipment.

## A

[¶17]   "Whether a personal representative breached a fiduciary duty is a question of fact, which will not be reversed on appeal unless it is clearly erroneous." *Estate of Sande*, 2020 ND 125, ¶ 29, 943 N.W.2d 826.

> "To establish a breach of fiduciary duty, the plaintiff must prove: 1) a fiduciary relationship between the plaintiff and defendant; 2) a duty by the defendant to the plaintiff arising from that relationship; 3) the defendant's breach of that duty; and 4) damage to the plaintiff proximately caused by that breach of duty."

*Berger v. Sellers*, 2023 ND 171, ¶ 29, 996 N.W.2d 329. Section 30.1-18-03(1), N.D.C.C., provides for fiduciary duties of personal representatives:

> "A personal representative is a fiduciary who shall observe the standards of care applicable to trustees. A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this title, and as expeditiously and efficiently as is consistent with the best interests of the estate. The personal representative shall use the authority conferred upon the personal

6

representative by this title, the terms of the will, if any, and any order in proceedings to which the personal representative is party for the best interests of successors to the estate."

*See also* N.D.C.C. ch. 59-16 (providing trustee duties). A personal representative may be "liable to interested persons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust." N.D.C.C. § 30.1-18-12.

B

[¶18] Almer argues the personal representative breached fiduciary duties by retaining estate assets and failing to distribute income derived from them. His arguments implicate various statutory provisions concerning a personal representative's authority over estate assets during the administration period.

[¶19] A decedent's property devolves to devisees upon death "subject to" estate administration. N.D.C.C. § 30.1-12-01. During administration, the personal representative has the same power the decedent had over his or her property, "in trust however, for the benefit of the creditors and others interested in the estate." N.D.C.C. § 30.1-18-11. A personal representative has a duty to settle and distribute estate assets "as expeditiously and efficiently as is consistent with the best interests of the estate." N.D.C.C. § 30.1-18-03. A personal representative has authority to retain and lease property in the estate "for administration purposes for the benefit of interested persons." *Estate of Hogen*, 2015 ND 125, ¶ 24, 863 N.W.2d 876.

[¶20] Almer argues the personal representative "wrongfully took over and retained the Almer farming and oil and gas operations in violation of N.D.C.C. § 30.1-18-15(24)," which says a personal representative may continue a decedent's unincorporated business or venture in "the same business form" for a period less than four months from the date she was appointed. Almer asserts the personal representative violated this law because she "took over and carried on those businesses more than four months after her appointment."

[¶21] Almer's reliance on this law is not persuasive. Almer has not identified evidence showing the personal representative took actions that would constitute a farming or oil and gas business or venture. The personal representative hired a custom combiner to take possession of grain Casey Almer planted on the farmland in 2016, entered into a lease with another farmer for 2017, sold grain to raise funds for estate administration, and leased or

7

continued to lease minerals the decedent owned. These transactions are expressly authorized by N.D.C.C. § 30.1-18-15, which states the personal representative may "[r]etain assets owned by the decedent pending distribution or liquidation," may "dispose of an asset . . . for cash," may enter "for any purpose into a lease as lessor or lessee" and may enter "into a lease or arrangement for exploration and removal of minerals or other natural resources."

[¶22] Almer also argues the personal representative violated the Uniform Principal and Income Act (1997), N.D.C.C. ch. 59-04.2, by not distributing minerals to a testamentary mineral trust or making distributions of royalty income. He notes section 59-04.2-06 states an "income beneficiary is entitled to net income from the date on which the income interest begins," which is "the date of a testator's death . . . even if there is an intervening period of administration of the testator's estate." However, N.D.C.C. ch. 59-04 plainly does not apply when a will or trust provides conflicting provisions, in which case the trust or estate "shall" be administered "in accordance with the terms of the trust or the will." N.D.C.C. § 59-04.2-02(1)(a). The will in this case differs from the statute by allowing the personal representative, in her "absolute discretion" to use "any" of the "liquid assets in my Estate" to pay "my debts and taxes."

[¶23] The district court held the personal representative did not breach her fiduciary duties by retaining and using estate assets and income during the administration period. The court explained the costs of administering this estate, including taxes and litigation expenses, have been "substantial and ongoing." The court found "it would have been imprudent and unreasonable for the personal representative to immediately distribute all of the estate assets or fail to maintain a financial reserve in the estate, until such time as the estate was actually drawing to a close." The court found the personal representative acted reasonably when she retained and utilized estate assets. The court's findings are supported by the evidence and not clearly erroneous.

C

[¶24] Almer claims the personal representative breached fiduciary duties by engaging in various other conduct.

[¶25] Almer argues the personal representative had no basis to believe he stole grain, and she wasted estate assets by pursuing litigation against him that ultimately failed. The district court found several individuals made statements to the personal representative that

8

gave her reason to believe the decedent's grain bins were full at the time of his death. The court found Almer had access to the grain bins before and after the decedent's death and was generally uncooperative with the personal representative. The court found that a forensic accountant provided the personal representative with a report indicating grain was missing and that Almer sold more grain than he produced on his own property. The court found the personal representative's accusations and decision to bring the lawsuit against Almer were reasonable given the information she had at the time. The court also found the protracted and expensive nature of the litigation with Almer was due in part to counterclaims pursued by Almer. We conclude the court's findings are not clearly erroneous.

[¶26] Almer argues the personal representative failed to distribute equipment that was devised to him. He asserts some farm equipment was improperly characterized as construction equipment. The district court found "more than two hundred pieces of equipment" existed during the decedent's life, the equipment "went back and forth" between farming and construction operations, and the decedent never created a list characterizing the equipment. The court found the personal representative's distribution of the equipment, which was based on advice by "those who were familiar with the equipment and its day-to-day uses," was reasonable and did not constitute a breach of fiduciary duty. These findings are not clearly erroneous.

[¶27] Almer argues the personal representative failed to properly maintain farm equipment and distributed some equipment in a damaged state. The district court found Almer failed to prove this claim. The court noted Almer only provided his opinion as to damages, which the court did not find credible. The court explained Almer "claims he paid to repair a few of these things, but presented no receipts showing the cost. He alleges $100,000.00 in repair costs for a sprayer and another $100,000.00 for a tractor, but then admitted at trial that he does not know what is wrong with these items, has never had them looked at by a dealer or repair shop, and does not know what it would actually cost to repair them." These findings also are not clearly erroneous.

IV

[¶28] Almer argues the district court erred when it ordered attorney's fees and other litigation expenses to be paid by the estate. He asserts it was impermissible for the court to approve fees incurred as a result of the personal representative's unsuccessful conversion lawsuit against him. We disagree. Under N.D.C.C. § 30.1-18-20, a personal representative

9

is entitled to receive reasonable attorney's fees from an estate when he or she "defends or prosecutes any proceeding in good faith, whether successful or not." *See also* N.D.C.C. § 30.1-18-15(21) (authorizing personal representatives to employ attorneys); N.D.C.C. § 30.1-18-15(22) (authorizing personal representatives to prosecute and defend claims for the protection of the estate). As we explained in Part III-C of this opinion, the district court did not err when it found the personal representative acted in good faith when she sued Almer on behalf of the estate. Therefore the court's approval of those litigation expenses was permissible. Almer also argues he is entitled to attorney's fees for his litigation expenses. His assertions necessarily fail because they are premised on success in this appeal, which he has not achieved.

V

[¶29] We have considered Almer's remaining arguments and conclude they are either without merit or unnecessary to our decision. The judgment is affirmed.

[¶30]  Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr